TINDAL v. NEAL.

1. WILLS—LIMITATION OF ESTATES.—A devise to the children of A. "alive at the death of my wife * * * for and during the terms of their natural lives, and after their deaths to their respective children forever," passes a vested transmissible interest to all the children of A. alive at the death of the wife, opening and letting in children born before falling in of second life estate.

2. RENTS—TENANT IN COMMON.—CIRCUIT DECREE construed to mean that tenant in common should account for such rents and profits as she had received from her trustee in possession of the common property.

Before BENET, J., Sumter, June, 1899. Affirmed.

Action for partition by Susan S. Tindal, individually, and as administratrix of Mary E. Tindal, against John L. Neal, Charles M. Neal, S. Lula McKnight, Chas. L. Cuttino, Thos. P. Cuttino, David W. Cuttino, and S. James Cuttino. The decree is as follows:

"The above styled cause was brought to partition a tract of 350 acres of land, more or less, situate in said county and State, and bounded * * * It was alleged in the complaint that this tract of land descended to the parties to this cause as the heirs at law of Mary E. Tindal, who died intestate seized and possessed of the same; and that the plaintiff, her daughter, is entitled to one-third, and her grand-sons, John L. and C. M. Neal, are each entitled to one-sixth, and that her grand-children, Charles L. Cuttino, Thomas P. Cuttino, S. James Cuttino, David W. Cuttino, and S. Lula McKnight, were each entitled to one-fifteenth. The complaint further alleged that the plaintiff and the defendants were seized and possessed of said tract of land as tenants in common, and owned no other lands in common. The complaint further alleged that the defendant, John L. Neal, was in possession of more than his proportionate share of said premises, and had rented out parcels of said land and collected the rent, and prayed that he be required to account for the same.

"The defendants answered, denying the allegations of the plaintiff, that the parties to said action owned no other lands in common, and they alleged that they, with the plaintiff, were seized and possessed as tenants in common of an additional tract of land situate in the county and State aforesaid, containing 100 acres, more or less, adjoining lands of * * * and that the interests and estates of said parties in that tract of land were in same proportion as those set forth in the complaint in regard to the tract of land therein described. The defendant, John L. Neal, admitted that he was occupying a part of the land described in the complaint, but denied the remaining allegations of paragraph 3 of the complaint.

"Subsequent to the commencement of this action the defendant, David W. Cuttino, departed this life intestate and unmarried, leaving as his only heirs at law and distributees the defendants, S. Lula McKnight, Charles L. Cuttino, Thomas P. Cuttino, and S. James Cuttino; and by an order made in said cause the action was continued against the said parties as his heirs at law, and they are now entitled to one-twelfth each in the estate.

"There is no controversy as to the tract of land described in the complaint and the interests of said parties therein, and the contention arises as to the tract of 100 acres of land referred to and described in the answers of the defendants. The cause was referred to the master for said county to take and report the testimony, and the master duly filed his report thereof. It appears from the testimony and record evidence taken and proved before the master that one Samuel Perdriau made his will, dated July 15th, 1842, which was duly admitted to probate in said county on October 2, 1843. By the second clause of said will the testator devised his estate to his wife, Esther Perdriau, for life, with right to dispose of one-half by will, etc. The other half of said estate he directed his executors to sell and divide the proceeds, the words of the devise being as follows: 'The proceeds of said sale of said half of the estate, given as aforesaid to my wife for life, to be divided between Ann M. China, wife of John China, jr., the

children of my deceased brother, Peter Perdriau, and also the children of my sister, Esther Wells, alive at the death of my wife, share and share alike, for and during the term of their natural lives, and after their deaths to their respective children forever. It is my will that if the said Ann M. China, either of the children of my brother Peter or sister Esther, should die in my lifetime or the lifetime of my said wife, that the child or children of such one or more of them as may so die, take the part of their deceased parent.' At the time of the death of the testator, his brother, Peter Perdriau, and his sister, Esther Wells, were dead; and at the time of the death of Esther Wells, she left surviving her, among other children, her daughter, Mary E. Wells, who married one Charles Lynam some time previous to the year 1832, and the children of the said Mary E. Lynam, Charles Lynam, and Mary A. Lynam, who subsequently married one Neal. And at the death of Mary E. Lynam, who had married one John B. Tindal, her daughter, Susan S. Lynam, then the wife of John M. Tindal, alone survived her, the said Mary A. Neal having predeceased her mother, leaving as her only heirs at law the defendants, John L. and C. M. Neal; and the said Charles Lynam having also predeceased his mother, Mary E. Lynam (then Tindal), leaving one child, Portia, who intermarried with one T. P. Cuttino. Portia died in 1884, her husband being then dead, leaving the Cuttinos and Mrs. McKnight as her only heirs at law. The said Charles Lynam and his sister, Mary A. Neal, the children of Mary E. Lynam, *nee* Wells, and grand-children of Esther Wells, were alive at the date of the will, death of the testator, and at the death of the testator's wife, Esther, the first life tenant. Susan S. Tindal, *nee* Lynam, a daughter of said Mary E. Lynam, was born some time after 1837, about 1840, her sister, Mary A. Neal, having been born about 1837. About the year 1852, the said Mary E. Lynam (who was the daughter of Esther Wells and the second life tenant under the will of the testator) intermarried with one John B. Tindal, and on the 6th day of January, 1852, joined in a marriage settlement by

deed executed on that day, and recorded in the office of the clerk of the Court for Sumter County, in book O, at page 327, and thereby conveyed to Richard F. Wells as trustee, among other property, 'All and singular the undivided interest and estate whatever, real or personal, or both, in remainder, or in expectancy or in *presenti,* of the party of the second part (Mary E. Lynam), under the provisions of the will of Samuel Perdriau, deceased, to the sole and separate use during her life of the party of the second part, and at the death of the party of the second part, she leaving issue alive at her death, all the said last mentioned negroes and her interest as aforesaid under the will aforesaid, shall go to and be vested absolutely in the issue of the said party of the second part in such manner and proportion as the said issue would be entitled under the statutes of distributions were she to die a widow and intestate.' In 1851, Esther Perdriau, the widow of the testator, filed a bill in the Court of Equity in said county and State, to obtain the assent of the Court to her relinquishing one-half of the estate passing to her under the will of her deceased husband, Samuel Perdriau, and praying for a sale of that half and for a present distribution of the proceeds among the parties to whom it was bequeathed at the expiration of her life estate. A decree to that effect was obtained, to which no appeal was taken except upon a single point, viz : the decree divided the proceeds of sale into three equal parts, one to Ann M. China, one to the children of Peter, and one to the children of Esther, and the contention was that Ann M. China did not take one-third of the proceeds, but should take an equal part with each of the children of Peter Perdriau and of Esther Wells. The Court of Appeals held that they took equally and *'per capita,'* upon the clear reason that the contingency of surviving testator's wife bore the same relation to Ann M. China as it did to the children of Esther Wells and Peter Perdriau. See the case of *Perdriau* v. *Wells,* 5 Rich. Eq., 20. Under the decree in said cause the interests going to the children of Esther Wells and Peter Perdriau were assigned to them, the shares going to

the married women being delivered to trustees. The share of Mary E. Lynam was delivered to R. F. Wells, trustee, to be held in accordance with the terms of the will of Samuel Perdriau, the said Richard F. Wells being the trustee named in the marriage settlement between Mary E. Lynam and John B. Tindal. The proceeding above referred to was solely to divide the estate among the life tenants, and none of the children of Mary E. and Charles Lynam (the remaindermen under said will) were made parties to said cause, although they were *in esse* at the time. See equity roll, bills 166. In 1880, a petition was filed in this Court by Mary E. Tindal (formerly Lynam) and her daughter, Susan S. Tindal, wherein it was alleged that Richard F. Wells, the trustee aforesaid, had died, and praying that John M. Tindal, the husband of Susan S. Tindal, the petitioner, be appointed trustee in his stead; and further alleging that an action had been previously commenced against the said Richard F. Wells for an account of the trust fund turned over to him as aforesaid; that he had departed this life pending said proceeding, but that a compromise had been effected with his heirs at law, whereby 100 acres of land of his estate should be turned over and delivered to a trustee in full settlement of the trust funds theretofore held by him. The said proceedings referred to in said petition is enrolled as judgment roll 5719 in said county, and the said case was compromised and the land duly turned over and delivered by the heirs at law of said Richard F. Wells to John M. Tindal as trustee, he having been appointed as such by order made under said petition, as appears from judgment roll 2629; and the said John M. Tindal admits in his testimony in this cause that he is in possession of said tract of land as trustee, and has collected the rents, income and profits from the same for a number of years last passed.

"I find as a matter of fact from the testimony and from the record evidence proven before the master and heretofore referred to, that the 100 acres of land described in the answers of the defendants herein and sought to be partitioned

in this cause, represent the interest and estate passing under the will of Samuel Perdriau to Mary E. Lynam, afterwards Tindal, for life, and that under the terms of said will said land is now owned by the parties to this cause as tenants in common in the proportions set forth in the complaint in regard to the tract of 350 acres therein described. It appears from the testimony that the 100 acre tract of land is somewhat erroneously described in the answers of the defendants by reason of change of ownership or otherwise of the adjoining proprietors, and the correct description at this time is as follows: * * * The question as to the interest of the defendants in said tract of land turns upon the construction of the will of Samuel Perdriau, and I hold as matter of law that the children of Mary E. Lynam, afterwards Tindal, who were alive at the death of the testator and at the death of his wife, took vested remainders subject to open, if necessary, and let in other children of Mary E. Lynam, who should come into existence; the testator evidently so intended, as he provided in his will against a lapse as follows: 'It is my will that if the said Ann M. China, either of the children of my brother Peter or sister Esther, should die in my lifetime or the lifetime of my said wife, that the child or children of such one or more of them as may so die, take the part of their deceased parent.' Thus it follows that if Mary E. Lynam had died during the lifetime of the testator or his wife (the first life tenant), the children of Mary E. (the second life tenant) would have taken a vested interest under the express terms of the will. If the grand-children of his sister, Esther (mother of Mary E. Lynam), were special objects of his bounty and affection, should their parents die in the lifetime of himself or wife, why not equally so should the children of Esther outlive himself and wife and die thereafter? The testator used neither word nor expression to indicate that the estate given under his will should not vest in the grand-children of his sister, Esther, as of the date of the will. He did not use the words 'surviving children' or an equivalent expression to indicate that only those grand-children who

might survive their parents (the second tenants for life) should take the whole. It would be doing violence not only to the expressed intention of the testator, but to all the springs of human affection, to exclude the grand-children of his sister, Esther, who were evidently in the testator's mind at the time he drew his will. By reference to the case of *Barnes* v. *Provoost,* 4 Johns., 60 N. Y., as annotated in two leading cases in the American Law of Real Property, page 260, it appears: That the perplexing questions arising in cases of remainders, are those which depend in some way upon a specified contingency or condition, or upon different contingencies or conditions. Where there is no condition or qualification named in the will or deed, the remainder is regarded as vested in the persons to take it; and they become so for the owners of the estate as soon as the time of vesting arrives, usually the death of the testator, although the time when he was to be entitled to the possession did not arrive before his death. It is only when to the remainder there are attached conditions precedent or events named, which are to happen or fail to happen as precedent incidents, that the discriminating conclusions of Courts are necessary to determine the rights of parties. The vested remainder is that part of the estate bestowed upon one person, to take effect in possession at the close of the interest of another person, with no contingent provision, condition or event intermediate, which can possibly defeat the rights of the remaindermen. A remainder is contingent when the person named to take it may possibly be defeated in his right of property by some event designated and provided to have that effect, or when the persons to take depend upon some contingent event, which is not contingent merely because the time of possession or enjoyment is made to depend upon contingent events. In the first class named there is no contingency as to the person who is to take, but only as to the time when the persons designated are to enjoy or to possess; in the other, the contingency relates to the persons who are to take, etc. It is not necessary that the party named to take in remainder shall be certain

ever to enjoy the possession; as, for example, an estate may be conveyed to one for life, with remainder to another in fee. The foregoing principles apply equally and as exacting when a vested estate is limited in remainder to a family of children who may be thereafter born, if one is alive when the testator dies, all succeeding children are let in and vested as of that period; if none are alive, then the remainder vests in the first one born, and all succeeding children become vested as of the time of the birth of the first.    And this is the rule in all cases where a remainder is limited to a class of persons.    The foregoing principles are gathered from the annotations to the case referred to, the exact language being used in many instances.    It is the policy of the law to give to deeds and wills such construction, where permissible, as will effect the early vesting of estates.    *Boykin* v. *Ancrum,* 21 S. C., 529; *Wilson* v. *McJunkin,* 11 Rich., 530; *Durant* v. *Nash,* 30 S. C., 192.    When the remainder is to persons *in esse* at the time the limitation is made and upon an event certain, as at the death of a life tenant, it is a vested transmissible remainder in such person.    *Haynsworth* v. *Haynsworth,* 12 Rich. Eq., 114.    If a devise is to a class as children, at the death of the life tenant, the remainder is vested in those living at the death of the testator.    *Rainsford* v. *Rainsford,* Spear Eq., 397; *Evans* v. *Durant,* 1 Strob. Eq., 82; *Bentley* v. *Long,* 1 Strob. Eq., 411; *Schuler* v. *Bull,* 15 S. C., 432; *Bannister* v. *Bull,* 16 S. C., 220; *McCreery* v. *Burns,* 17 S. C., 63.    Also see 2 Jarman on Wills, 2d Amer. ed., page 54-56.    In the case at bar there is no intervening circumstance which was to happen before the grand-children of Esther Wells could take; they could take immediately upon the death of their parent, an event certain to occur, their enjoyment and possession being alone postponed.    There was no intervening circumstance, such as the death of a third party, before the grand-children could take, but they were entitled to take immediately upon the falling in of the life estates.    In 2 Washburn, page 599 (2d Amer. ed.), the rule is stated as follows: "There is, however, a class of cases where a remainder is regarded as

vested, although all the persons who may take are not ascertained or *in esse,* and cannot be until the happening of some future event. And that is where there is a devise of a remainder to a class of which each member is equally the object of the testator's bounty, as to "the children" of a person, some of whom are living at the testator's death. As, for instance, upon a devise to A. for life, remainder to the children of J. S., if J. S. has children at the testator's death, they would take a vested remainder; and if he were to have other children during the life of A. and before the remainder was to take effect in possession, it would open and let in the children born during A.'s life, who would take shares as vested remainders.' The same author concludes his discussion of the subject as follows: 'If the limitation be by devise to a class of persons, any of whom are alive and capable of taking at the death of the testator, the enjoyment of which is postponed until after the expiration of a particular estate, the estate will vest in such as are capable of taking at the death of the testator, and will open and let in such of the same class as may come *in esse* during the continuance of the particular estate.' Under the subject of Devises and Bequests to Children, in 2d Jarman, at page 54-56 (2 Amer. ed.), the rule is stated as follows: 'But the question which has been chiefly agitated in devises and bequests to children is, as to the point of time at which the class is to be ascertained, or, in other words, as to the period within which the objects must be born and existent; supposing the testator himself not to have expressly fixed the period of ascertaining the objects, which, of course, takes the case out of the general rule—for example, a gift to children now living—applies to such as are in existence at the date of the will, and those only; and a gift to children living at the decease of A. will extend to children existing at the prescribed period, whether the event happens in the testator's lifetime (supposing that they survive him) or after his decease. The following are the rules of construction regulating the class of objects entitled in respect of period of birth under general gifts to children: 'First, that an imme-

diate gift to children (*i. e.,* a gift to take effect in possession immediately on the testator's decease), whether it be to the children of a living or a deceased person, and whether the children simply or to all the children, and whether there be a gift over in the case of the decease of any of the children under age or not, comprehends the children living at the testator's death (if any), and those only; notwithstanding some of the early cases which make the date of the will the period of ascertaining the objects. It is scarcely necessary to observe that this and the succeeding rules apply to issue of every degree as grand-children, great-grand-children, etc., though cases to the contrary are to be found, especially at an early period. Secondly. That where a particular estate or interest is carved out with a gift over to the children of the person taking the interest or the children of any other person, such gift will embrace not only the objects living at the death of the testator, but all who may subsequently come into existence before the period of distribution. Thus in the case of a devise or bequest to A. for life, and after his decease to his children, or (which is a better illustration of the limits of the rule, since, in the case suggested, the parents being the legatees for life, all the children who can ever be born necessarily come *in esse* during the preceding interest), to A. for life, and after his decease to the children of B., the children (if any) of B. living at the death of the testator, together with those who happen to be born during the life of A., the tenant for life, are entitled, but not those who may come into existence after the death of A. The rule is the same where the life interest is not of the testator's own creation but is anterior to his title. In cases falling within this rule, the children, if any living at the death of the testator, take an immediately vested interest in their shares subject to the diminution of those shares (*i. e.,* to their being divested *pro tanto*), as the number of objects is augmented by future births during the life of the tenant for life; and, consequently, on the death of any of the children during the life of the tenant for life, their shares (if their interests therein is trans-

missible) devolve to their respective representatives; though
the rule is sometimes inaccurately stated, as if existence at
the period of distribution was essential.' The author cites
*Mathews* v. *Paul,* 3 Swanst., 339, and *Houghton* v. *Whit-
greave,* 1 Jac. & Walk., 150, as cases where the rule was in-
accurately stated. In support of the foregoing propositions,
see also 20 Amer. and Eng. Ency. of Law, 854; 29 Amer.
and Eng. Ency. of Law, 411; 2 Washburn on Real Property,
603. In *Gourdin* v. *Deas,* 27 S. C., 484, the rule is stated
by the Chief Justice as follows: 'The authorities in this State
appear to be somewhat conflicting, but it seems to us that the
more recent cases support the view that the remainder is
vested in such of the issue as were *in esse* at the date of the
deed, at that time, opening to let in other issue as they came
into existence.' The same principle was announced in
*Schuler* v. *Bull,* 15 S. C., 231; *McCreery* v. *Burns,* 17 S. C.,
45; *Bankhead* v. *Carlisle,* 1 Hill Ch., 357. In *Brown* v.
*McCall,* 44 S. C., 503, the Chief Justice quotes with approval
the language of Ch. Harper in the case of *McMeekin* v.
*Brummet,* 2 Hill, 638: 'So if these slaves had been given to
comfort Terry for life, remainder to the sons of Spencer and
Daniel Brummet, I take it to be equally clear that there would
have been a vested remainder in the sons of Spencer and
Daniel Brummet who were living at the time of the gift.'
If, therefore, the 'sons of Daniel and Spencer Brummet who
were living at the time of the gift,' took vested remainders,
the children of Mary E. Lynam who were alive at the time of
the devise in the case at bar, also took vested remainders.
The word children designates a class no less perfectly than
the word sons. 20 Amer. and Eng. Ency. of Law, *supra*
In *Crosby* v. *Smith,* 3 Rich. Eq., 254, the point of the deci-
sion is clear that the Chancellor treated the devise to the chil-
dren of the testator as a class, and held that those who were
*in esse,* at the time of the testator's death took vested remain-
ders, which upon their dying in the lifetime of the tenant for
life were transmitted to their representatives and not to the
surviving children. See also *Crim* v. *Notts,* 4 Rich. Eq.,

340; *William* v. *Holmes,* 4 Rich. Eq., 475; *Wilson* v. *Mc-Junkin,* 11 Rich. Eq., 527; *Bentley* v. *Long,* 1 Strob., 43; *McGregor* v. *Toomer,* 2 Strob. Eq., 51; *Key* v. *Weathersbee* (mss. March 29, '95), 43 S. C., 423; *Gourdin* v. *Deas,* 27 S. C., 484; 4 Kent Comm., 197. In all these authorities the same principle is affirmed, viz: That the children *in esse,* when the instrument took effect, *i. e.,* the death of the testator in the case at bar, took vested transmissable remainders, opening to let in all other children who come into existence before the falling in of the life estate. The following cases in South Carolina may appear to be in conflict with rules hereinbefore announced, but a careful anaylsis of them will show that such is not the case: *Myers* v. *Myers,* 2 McC. Ch., 256 (1827). In that case the effort was to include in the division children who were born subsequent to the death of the life tenant, or born subsequent to the period fixed for distribution, and it was held that they were not entitled. Throughout the entire case the doctrine of vested remainders in those children *in esse* at testator's death and in those born afterwards and before the period for distribution, seems to have been conceded. *Swinton* v. *Legare,* 2 McC. Ch., 440 (1827). In that case the representatives of the children who died in the lifetime of the life tenant were excluded, because by the express terms of the devise the remainder was limited over to the 'surviving children,' and hence the remainder was contingent. *Cole* v. *Creyon,* 1 Hill Ch., 311 (1833). This case was reviewed in *Gourdin* v. *Deas,* 27 S. C., *supra,* and *Brown* v. *McCall,* 44 S. C., *supra,* and was held to have decided only two points, viz: (1) that the application for partition was premature, as the time fixed by the will for distribution had not arrived: (2) that the division should be *per stirpes* and not *per capita.* In both *Gourdin* v. *Deas* and *Brown* v. *McCall,* Chief Justice McIver cites with approval the remarks of Chancellor Harper in *Cole* v. *Creyon,* 'there would be reason for making a different construction, and probably a different one ought to be made, when the child dying before the time fixed for distribution has left

children; and this also to effectuate the intention; for it cannot be supposed that testator intended the object of his bounty not to be capable of transmitting to his children so as to provide for them.' *Cole* v. *Creyon* thus becomes an authority sustaining the contention of the defendants in the case at bar; the discussion there did not relate to a case like the one at bar, but simply as to what portions of an estate would vest in an individual on the one hand and a class on the other. *Connor* v. *Johnson*, 2 Hill Ch., 41 (1834). The real question decided in this case was that the division should be *per stirpes* and not *per capita*. Subsidiary to that question was the further one, as to what should become of the shares of the remaindermen who died in the lifetime of the life tenant leaving no issue, and it was in substance held that the remainders were divested by the express terms of the will, which provided that in case any of the children should die in the lifetime of the life tenant leaving 'no issue,' then their shares should go over. It was upon a similar principle that the case of *Brown* v. *McCall, supra*, was decided, in which case *Connor* v. *Johnson* was also reviewed. Should the case of *Connor* v. *Johnson* be found in conflict with the contention of defendants herein, yet it will be remembered that it is one of the cases referred to in *Gourdin* v. *Deas, supra*, by name, where it was held that these old cases were controlled by the more recent cases sustaining a different doctrine, viz: that a devise to a class, as children, constitutes a vested remainder in all of the class *in esse* at testator's death, opening to let in other children born before the period fixed for distribution and for the enjoyment of the estate in remainder. *Lemacks* v. *Glover*, 1 Rich. Eq., 145. The question involved in that case is not involved in the case at bar, although the Chancellor, quoting from *Mathews* v. *Paul*, 3 Swanst., 339, does say: 'In all cases of legacies payable to a class of persons at a future period, the constant rule has been that all persons coming *in esse*, and answering the description at the period of distribution, shall take; and the same rule must be applied to persons excluded.' It will be observed that the case of

*Mathews* v. *Paul* is one of the two cases in which Jarman says, *supra,* 'that the rule is sometimes inaccurately stated, as if existence at the period of distribution was essential.' It is remarkable how an erroneous statement of the rule, as in *Mathews* v. *Paul,* becomes perpetuated by reference thereto without due examination. *Lemacks* v. *Glover* cannot be regarded as a decision adverse to the defendants herein. *Deveaux* v. *Deveaux,* 1 Strob. Eq., 283. The point decided there was, that children coming *in esse* after the period fixed for distribution could not be included with those *in esse* at testator's death, or who were born before the period fixed for distribution, following *Myers* v. *Myers, supra. Dickson* v. *Dickson,* 23 S. C., 216. In that case it was held that 'the interests of the three sons were not vested but contingent, by reason of the fact that they were dependent upon the uncertain event of Amelia's dying without issue.' That is the only point decided in the case, although it is true that the Circuit Judge and Chief Justice Simpson did casually discuss the doctrine of a devise to a class; the Chief Justice stating, without quoting any authority for the statement except Jarman (which has been shown not to apply here), 'There is a class of cases in which, when property is given by will to be distributed among a class of persons at some future time or on some future contingency, all are let in who come into existence before the time of the happening of the event; provided, they be in existence at the happening of said event, and no one but such as may be in existence at that time can take.' The statement of the Chief Justice was *obiter dictum,* being in no way necessary to a decision of the case, and Jarman does not sustain the position there taken by the Chief Justice; on the contrary, he lays down the rule, that a devise to a class is 'a gift to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time.' They are uncertain in number, because subsequent births before the period of distribution let in after-born children; hence the number is uncertain until the death of the life tenant; the quantity each child is to take is uncertain, but the quality of

2—59

the estate is fixed and not uncertain; it is a vested remainder in those *in esse* at testator's death, opening to let in after-born children, who, *eo instanti,* take vested interests in remainder. This is distinctly laid down by Jarman, at page 54, *supra.* It is thus seen that *Dickson* v. *Dickson* is not in conflict with the contention of the defendants. The idea which seems to have been in the mind of Chief Justice Simpson, that only those children alive at the death of the life tenant should take, was probably derived from the case of *Wessinger* v. *Hunt,* 9 Rich. Eq., 459, which in *Hayne* v. *Irving,* 25 S. C., 289, is said 'to have established the doctrine that a bequest to be distributed at a future time to the death of the testator, to wit: at the death of an intermediate life tenant, all who answer to the description at the time of the distribution are the parties alone entitled.' But Chief Justice McIver, in *Gourdin* v. *Deas, supra,* points out that Wardlaw, Chancellor, does not use the word 'alone' in the case cited; but, on the contrary, he held that 'the representatives of a child who had predeceased the life tenant were entitled to share in the estate.' It will thus be seen that the idea that only those children in existence at the death of the life tenant can take, to the exclusion of those who, although *in esse* at testator's death, yet die in the lifetime of the life tenant, is erroneous; on the contrary, the error in *Dickson* v. *Dickson* and *Hayne* v. *Irving,* is the same error that was pointed out by Chief Justice McIver, as supposed to have been derived from *Wessinger* v. *Hunt,* and is also the same error derived from *Mathews* v. *Paul,* 3 Swanst., *supra. Clark* v. *Clark,* 19 S. C., 345. The devise was to William Clark for life, at his death to his children (there being two or them) and then to their children living at his death. One of the two children, Mrs. Sherwood, died after the making of the will but before the testator, and hence took nothing; and it was held that by the express terms of the will that the share she would have taken passed to her children as purchasers by substitution. In the course of the opinion, Mr. Justice McGowan does say, that 'if a testator gives a legacy to be divided among the children

of A. at a particular time, those who constitute the class at
the time will take;' and cites *Cole* v. *Creyon* and *Swinton* v.
*Legare, supra*—but those cases do not support the doctrine
claimed, and besides the statement was *obiter dictum*. Mrs.
Sherwood had died before the testator and before the will
took effect. Moreover, the statement of Justice McGowan
was not inconsistent with the rule here, because the conten-
tion is that the children of Mary E. Lynam (Tindal) were
of the class at the testator's death, which was the time that
the will took effect, and hence took vested remainders, the
enjoyment being merely postponed until the death of the life
tenant. *Shanks* v. *Mills*, 25 S. C., 362. The point decided
in this case was in the following language of Mr. Justice
McGowan : 'The devise over, in this case, by its express
terms, was to take effect at the time of the death of Christina,
and was limited to her children who may be then living.'
This was a clear case of a contingent remainder, excluding,
of course, the representatives of a predeceased child. *Brown*
v. *McCall*, 44 S. C., 503. The only point decided in that
case was that by the express terms of the deed of settlement
the Berry children took a fee defeasable upon dying leaving
issue; and that, therefore, where one of them died in the life-
time of the life tenant leaving issue, such issue by the express
terms of the deed, took by way of substitution as purchasers.

·"I, therefore, conclude, as matter of law, that Mary E.
Lynam, afterwards Mary E. Tindal, took a vested remainder
in fee simple in the interest passing to her under the will of
Samuel Perdriau, and that by virtue of the terms of the mar-
riage settlement aforesaid, and of the law of the land appli-
cable to this case, her issue now own and possess such
interest; and it is adjudged, that the parties to this cause own
and possess the lands described in the complaint and the tract
referred to in the answers as tenants in common, their inter-
est therein being as follows : Susan S. Tindal, the plaintiff,
one undivided third part of the whole; John L. Neal and
Charles M. Neal, one-sixth part each of the whole; and S.
Lula McKnight, Charles L. Cuttino, Thomas P. Cuttino,

and S. James Cuttino, one-twelfth part each of the whole of said lands. The plaintiff being in possession of the tract of 100 acres of land, should account to the defendants for the income, rents and profits thereof, and any of the defendants in possession of any part of the tract of 350 acres should account for the income, rents and profits of the same.

"It is, therefore, ordered, that it be referred to the master for Sumter County to take testimony and report as to the rents, income and profits accruing from said premises, and also to take testimony and report whether partition in kind among the parties be practicable or expedient; and upon the filing of the master's report, either of the parties hereto have leave to apply for such further orders as may be necessary to effectuate the purport of this decree."

From Circuit decree, plaintiff appeals.

*Messrs. Haynesworth & Haynesworth,* for appellants, cite: *As to the construction of the will:* 5 Rich. Eq., 20; 44 S. C., 515; 1 Hill Ch., 357; Dud. Eq., 201; 1 Strob. Eq., 43; 12 Rich. Eq., 114; 33 S. C., 216; 9 Rich. Eq., 570; 1 Hill Ch., 311; 2 Hill Ch., 41; 23 S. C., 216; 2 DeS., 300; Bail. Eq., 7; 1 Strob. Eq., 84; 19 S. C., 350.

*Messrs. Lee & Moise* and *Purdy & Reynolds,* contra. The former cite: *As to the construction of the will:* 21 S. C., 529; 11 Rich. Eq., 530; 2 S. C., 78; 72 U. S., 268; 30 S. C., 192; Dud. Eq., 204; McM. Eq., 204; 4 Rich. Eq., 285; 20 S. C., 75; 12 Rich. Eq., 114; Spear Eq., 397; 1 Strob. Eq., 82, 411; 15 S. C., 432; 16 S. C., 220; 17 S. C., 63; 9 Ves., 233; 73 U. S., 458; 3 Pet., 376; 4 Pet., 1; 8 How., 495; 43 S. C., 414; 27 S. C., 484; 15 S. C., 421; 1 Hill Ch., 357; 2 Hill Ch., 638; 44 S. C., 503; 3 Rich. Eq., 254; 4 Rich. Eq., 340, 475; 1 Strob. Eq., 43; 2 Strob. Eq., 51.

September 18, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. There are but two ques-

tions presented by this appeal: 1st. Whether the Circuit Judge erred in holding that the children of Mary E. Lynam, afterwards Tindal, who were alive at the death of the testator, Samuel Perdriau, and at the death of his wife, took vested remainders in the property which is the subject of controversy in this case, subject to open and let in other children of Mary E. Lynam (now Tindal), who should come into existence. 2d. Whether the Circuit Judge erred in holding that "the plaintiff, being in possession of the 100 acre tract of land, should account to the defendant for the income, rents and profits of the same," and in directing the master to take testimony and report as to such income, rents and profits.

The first question has been so fully and satisfactorily discussed by the Circuit Judge in his decree (which will be incorporated by the reporter in his report of the case), as to supersede the necessity for any further discussion of that question. We, therefore, adopt his reasoning, enforced by the authorities which he cites, as amply sufficient to vindicate the conclusion which he reaches.

As to the second question, while it is true that the Circuit Judge does say in his decree that John M. Tindal (the husband of the plaintiff), who had been substituted as a trustee, under the marriage settlement between Mary E. Lynam and John B. Tindal, in the place of the original trustee, Richard F. Wells, who had died, was in possession, as such trustee, of the 100 acre tract of land; and afterwards does use the language excepted to, viz: "*the plaintiff* being in possession of the tract of 100 acres of land, should account to the defendants for the income, rents and profits thereof;" yet this is a mere error of statement, which certainly would not warrant a reversal of the judgment of the Circuit Court, as it can very easily be rectified, by construing the Circuit decree to mean, what we have no doubt the Circuit Judge did really mean, to wit: that any of the parties who were in the receipt of income, rents and profits of any portion of the lands sought to be partitioned, either

by the complaint or answer, should account for the rents and profits thereof. This is manifest from the language immediately following that just quoted, viz: "and any of the defendants in possession of any part of the tract of 350 acres [as to which the right of partition was not in question], should account for the income, rents and profits of the same." Under this conclusion of the true intent of the Circuit decree, the plaintiff, on the reference ordered, can only be required to account for as much of the income, rents and profits of the 100 acre tract of land as she may have received from the trustee, John M. Tindal; and if any further accounting for such income, rents and profits be desired, it will be necessary to make the said trustee a party to these proceedings.

The judgment of this Court is, that the judgment of the Circuit Court, as herein construed, be affirmed.