# VANZANT ET AL. *vs.* MORRIS.

1. A bequest to A "and his children," when A has no children either at the time the will is made, or when it takes effect by the testator's death, vests the absolute property in A; but where there is a specific bequest of slaves, with the addition of these words, to each one of the testator's children, some of whom are unmarried at the time the will is made and also at the testator's death, while others are married and have children living, and the vesting in possession is postponed until a future uncertain period, (as the death or marriage of the widow,) the children living when the property falls into possession take jointly with their parent.

2. The surviving brothers and sisters of a deceased infant, may recover, in equity, a legacy bequeathed to them jointly with him, without administration on his estate, when there are no debts against it.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. E. D. TOWNES.

THIS bill was filed to recover several slaves which complainants claimed under the will of their grandfather, John Wilhite, while the defendant claimed as purchaser under complainants' father and mother. The will of said Wilhite contains the following clauses:

"Item 3d. I give my wife Mary five hundred dollars of my ready paper money, that she may live comfortably, and assist in raising the four younger children and schooling them; also four head of horses, Selim, Tarleton, a sorrel and a roan filley, with all the farming utensils, with the wagon and gearing; also, all the hogs, and ten head of sheep, six cows and calves, and oxen; also, she must retain all the negroes, unless there should be two more of the blacks, then, in that case, she shall keep Prudence and Hannah, and the rest shall be given to the heirs as I shall hereafter direct; for sweetly we have labored together for it, and it is my desire she should enjoy it during her life or widowhood.

"Item 4th. My daughter Margaret, I bequeath to her and her children my slave Hannah, unless there is a slave born of my stock; in that case, shall have it, and give up Hannah, as above directed.

"Item 5th. I give to my son James B. Wilhite and his children my slave Ransom.

"Item 6th. I give to my son John P. Wilhite and his children my slave Elvira.

"Item 7th. I give to my son Jackson W. Wilhite and his children my slave Prudence, unless there is a second slave born in my stock ; in that case, he shall have it, and give up Prudence, as above directed.

"Item 8th. I give my son Claiborne L. Wilhite and his children my slave Jerry. These five oldest have received one hundred dollars in their horses and rigging.

"Item 9th. I give to my son Alfred M. Wilhite and his children my slave Sam and one hundred dollars in a horse and rigging out of the sales.

"Item 10th. I give to my son Wiley W. Wilhite and his children my slave Henry and one hundred dollars in a horse and rigging out of the sales.

"Item 11th. I give to my daughter Patsy C. Wilhite and her children my slave Nance and two hundred dollars of my ready hard money.

"Item 12th. I give to my son Calvin B. Wilhite and his children my slave Andy and one quarter-section of land, viz., (describing it,) and three hundred dollars of my ready hard money.

"Item 13th. It is my desire that my wife, Mary Wilhite, live on the land that I give to my son Calvin B. Wilhite, during her natural life or widowhood ; if there should be two slave children born of my blacks, then, at that time, the negroes to be given up to the heirs, as I have directed.

"Item 14th. It is my desire, if my widow do marry, the negroes shall be given to the heirs, as I have directed ; and if there is only one slave born, Hannah shall be sold ; if two slave children, Prudence shall be sold also, with all the rest of the property, and the money divided equally with the heirs ; and if my widow do not marry, she is to retain all the negroes and property her natural life. N. B. When there is two slaves born, then the young negroes shall be divided with the heirs ; if there is not two, the widow must retain all until her marriage, and if she does not marry, she shall retain all during her natural life."

The complainants, who are the surviving children of the testator's daughter Margaret, mentioned in the fourth clause of the will, allege that they and their deceased brother, James Vanzant, who died when about seven years of age, were living at the death of their said grandfather, and that they are entitled jointly with their mother to the slave Hannah and her increase ; that their father and mother took said slave under the provisions of said will, and sold her to one Mary Lockhart, or Mary Wilhite, by whom she was sold to the defendant. The defendant, in his answer, admits all the allegations of the bill, but denies that the complainants have any right, title or interest whatever in the slaves bequeathed by said will to their mother ; and he insists that, under the provisions of said will, the entire and absolute property in said slave Hannah vested in said Margaret, and passed with the possession to her husband, who thereby acquired an absolute right which he afterwards conveyed to defendant's vendor.— It appears that, at the time said will was made, said Margaret was married, and had children then living, while her brothers and sisters, except James B. Wilhite, were unmarried, and some of them not more than eight or ten years of age ; and at the testator's death, said John P. and Jackson W. were also married, but said Margaret was the only legatee who had children.

The chancellor dismissed the bill, holding that the words "children" and "heirs," as used in the will, were convertible terms ; that the bequest to said Margaret "*and her children*" meant a bequest to her *and her heirs*, and therefore vested the absolute property in her, which her husband, by virtue of his marital rights, could dispose of. The decree of the chancellor is now assigned for error.

WILLIAM COOPER, for the appellants, contended, 1st, that the plain reading of the clause, by itself, was a bequest to Margaret and her children jointly, and that this construction was not changed by a consideration of the other clauses of the will ; that the construction held by the chancellor was unwarranted, because it inferred that the testator had fixed a time to die before the birth of his grandchildren, which would be a strange proposition, especially when he spoke of

slaves likely to be born before his own death ; that the testator's intention doubtless was, to give Hannah and her increase to his daughter and her children, separate and apart from her husband, she being then a married woman with children ; that the falure to create the separate estate did not affect that part of the intention which was legally expressed, —did not destroy the joint interest of the daughter and her children living at her death, even if the bequest failed as to the children then unborn. He cited the following cases : Fellows, Wadsworth & Co. v. Tann, 9 Ala. 1003 ; Spear v. Walkley, 10 *ib.* 328 ; Jasper & Maclin v. Howard, 12 *ib.* 652; Nimmo v. Stewart, 21 *ib.* 682 ; Cook & Mitchell v. Lewis, 16 *ib.* 70 ; Rugely & Harrison v. Robinson, 10 *ib.* 737.

2. That, under the rule in equity, there was no necessity for administration on the estate of the deceased infant child of said Margaret.—Miller v. Eatman, 11 Ala. 614 ; Vandeveer v. Alston, 16 *ib.* 494; Frowner v. Johnson, 20 *ib.* 483; Bethea v. McCall, 5 *ib.* 315.

THOMAS M. PETERS, with whom was P. L. LIGON, *contra :*

1. In construing wills, the court is bound to find out the intention of the testator, and effectuate this intention. In doing this, the whole will is to be looked to, and the intention is not to be inferred from detached phrases ; and subsequent words and clauses must prevail over antecedent ones. Capal's Heirs v. McMillan, 8 Port. 197; Leavens v. Butler, 8 *ib.* 380 ; Stallsworth v. Stallsworth, 5 Ala. 143.

2. Besides; trying the meaning of words and phrases in a will, the court may look at all the circumstances, in which it might be called upon to determine the meaning of the same words and phrases when applied to a different state of facts. Wills v. Sayer, 4 Madd.; 2 Atk. 465 ; Hearle v. Greenbank, 3 Atk. 714 ; Arnold v. Chapman, 1 Ves. 108 ; 1 *ib.* 44.

3. And when words and phrases occur twice in the same instrument, they are to receive but one meaning in both places, unless a clear intention to the contrary is apparent.— Ridgway v. Munkittrick, 1 Dru. & War. R. 85.

4. When a bequest is to one "and her children," and there are no children at the date of the will, or at the death of the testator, unless the estate is limited to a life estate in the first

taker, the estate is given to the mother alone, exclusive of children.—Jenkins v. Freyer, 4 Paige 47 ; 2 Jarman on Wills, 75 ; Nimmo v. Stewart, 21 Ala. 682 ; Shearman v. Angel, 1 Bail. Eq. 351; 4 Eq. Dig. 342, § 9.

3. Apply these well-settled principles to the construction. of this will, and it seems · evident that the word " children," in the fourth clause, as well as in the others, was used synonymously with the word "heirs," as a word of limitation merely, and not for the purpose of including the testator's grandchildren, born and to be born, among his legatees. For it appears from the will itself, that it was made and published in contemplation of a speedy dissolution, when the testator "did not expect to live long,"—that he then had "five" older and " four" younger children, the latter of whom were minors yet to be raised and educated ; and therefore not likely to have children then or at the death of the testator. And the testimony and admissions show, that none of the nine legatees (excluding the widow) had or have children, except Margaret. The complainants' construction of the phraseology of the will is without application as to any of the legatees save Margaret ; yet it is the same in all the clauses, where the legatee is specified by name ; and unless the word " children" is construed as a word of limitation merely, in eight out of the nine cases in which it occurs, it has no application or meaning under the circumstances of this case; and otherwise the testator's grandchildren, born and to be born, would become legatees under the thirteenth clause of the will, upon the happening of the contingencies referred to in that clause. For the testator there uses the word "heirs" as a convertible term for legatees ; and upon the happening of the second contingency mentioned in that clause, he directs his property to be sold, and the money to be "divided equally" "with the heirs." This direction could only be made consonant with the antecedent dispositions of the will, by making the word "heirs" refer exclusively to his own children, as under our law it legitimately does (5 Ala. 158–164). Again ; it appears from the several clauses of the will, that the testator intended to make an equal distribution of his estate among his own children. In the fourteenth clause this is expressly declared. But if the word " children" in the fourth

clause is not construed as a word of limitation, this intention, as to Margaret, will be wholly defeated, and she will get but one-fifth part as much as her brothers and sisters,—a legacy for each of her four children being carved out of her portion. This certainly was never the testator's intention, and does not harmonize with the phraseology used in the subsequent part of the fourth clause of the will itself; for there, upon the happening of the event referred to, the testator gives the legacy to Margaret alone, without any mention of her children at all. Thus it will be seen that the defendant's construction makes the will harmonize in all its parts, gives meaning and application to its phraseology, and effectuates the evident and expressed intention of the testator to divide his estate "equally" among his own children—"the heirs."—Erwin, adm'r, v. Ferguson, 5 Ala. 158–164.

7. Nimmo v. Stewart, Wilde's Case, and others like them, relied on by complainants as militating against the defendant's construction, are really quite different. In these cases the manner of the gift, and the words used to convey the testator's meaning, are such as show that the testator had both the child and grandchild in his mind at the time as things of substance, and this is kept up throughout the whole. But here it is quite otherwise, and it is apparent that the word "children" is used as a mere matter of form, and is always dropped whenever the testator varies the bequest to suit some supposed contingency. This is particularly the case in the fourth clause.

CHILTON, C. J.—The question whether the property in controversy belongs to the complainants or to the defendant, depends upon the construction to be placed by us on the following clause in the will of the late John Wilhite, namely: "Item 4th. My daughter Margaret, I bequeath to her and her children my slave Hannah, unless there is a slave born of my stock; in that case, shall have it, and give up Hannah, as above directed." The clause referred to by the expression "above directed," is a portion of the preceding item, in which, after giving to his wife certain property, the testator says, "she (his wife) must retain all the negroes, unless there should be two more of the blacks; then, in that case, she

shall keep Prudence and Hannah, and the rest shall be given to the heirs, as I shall hereinafter direct; for sweetly we have labored together for it, and it is my desire that she should enjoy it during her life or widowhood."

By other clauses in the same will the testator makes several other bequests to his children, in which he uses language similar to that employed in the bequest to his daughter Margaret; for example—"To James B. Wilhite *and his children* my slave Ransom"; "To John P. Wilhite *and his children* my slave Elvira"; "To my son Jackson W. Wilhite *and his children* my slave Prudence, unless there is a second slave born in my stock; in that case, he shall have it, and give up Prudence, as above directed"; " To Claiborne L. Wilhite (another son) *and his children*," the testator gives his slave Jerry, and adds : "These five oldest have received one hundred dollars each in their horses and rigging"; "To Alfred M. Wilhite *and his children*" the testator gives his "slave Sam, and one hundred dollars in a horse and rigging to come out of the sales;" a similar bequest to Wiley W. of slave Henry; to his daughter Patsy C. and her children he gives Nance, a slave, "and two hundred dollars of his ready hard money." The testator then proceeds to fix periods when the slaves shall be delivered up to "the heirs," as he has "above directed."

It is quite manifest from an examination of this will, that the testator regarded the terms "heirs" and "children" as convertible and equivalent expressions. The property which he bequeathes to his own children, he desires should be delivered over to "his heirs," &c., and in every instance the gift to them is to each *"and his"* or "*her children*." The will is so inartificially drawn, that portions of it are almost inexplicable ; but it is our duty, from an examination of the whole of it, to arrive at the testator's intention.

The chancellor, by the decree in the record, is made to say, that "It is well settled that the word 'children' is, in general, a word of limitation, and not of purchase." This is doubtless a clerical misprision, for otherwise it would be at war with his conclusion, which immediately follows, where he says that a "bequest to a person, and to his or her children, vests the property jointly in the parent and children." But whether the premise be correctly stated or not, makes no

difference : the *conclusion* is right, and it is with *this* we have to do.

There can be no doubt that a testator by his will can limit property, whether real or personal, to one and to his children then born ; but a bequest to A and his children, if A has no children either at the time the will was made, or when it takes effect by the death of the testator, never has been held to create any interest in after-born children *as purchasers.*— The term "children," in such case, is a word of limitation, and not of purchase. So, in Wilde's Case, 6 Coke's R. 17 a, it was resolved by the judges, that if " A devises his lands to B and to his children or issues, and he hath not any issue at the time of his devise, that the same is an estate tail ; for the intent of the devisor is manifest and certain, that his children or issue should take, and as immediate devisees they cannot take, because they are not in *rerum natura*, and by way of remainder they cannot take, for that was not his intent, for the gift is immediate ; therefore, there such words shall be taken as words of limitation, namely, as much as children or issue of his body." In relation to the doctrine of this case, and the cases founded on it, Downes, C. J., in 1 Ball & Beatty 459, says the following propositions may be considered as settled by them: " Where the devise is in terms immediate, and so intended by the testator, and the description of the person to take is general, there, none that do not fall within the description at the time of the testator's death can take ; therefore, the after-born must be excluded ; but, where the enjoyment of the thing devised is, by the testator's expressed intent, not to be immediate by those among whom it is finally to be divided, but is postponed to a particular period, or until a particular event shall happen, then those who answer the general description at that period, or when the event happens on which the distribution is to be made, are entitled to take."

These authorities, and a number of others which might be cited, very clearly show, that the chancellor was right, in saying that the bequest to the several legatees who had no children before or at the time the will took effect, vested in them the absolute property in the slaves and other property bequeathed.—Davie v. Stephens, Doug. R. 306 ; Powell on Devises, vol. 2, pp. 494 to 502.

But it by no means follows that the testator used the term " children" as a word of limitation, from the fact that there may not, at the time of making his will, have been any children born of several of the legatees.   There are several clauses in his will, from which it would appear that he fixed upon a future event upon which the slaves were to vest in possession of the legatees.   In the fifth item the testator says, it is his desire that the widow should enjoy the property during her life or widowhood.   In the thirteenth item he desires his wife to retain the land which he had given to Calvin B. and his children, during her natural life or widowhood ; and he adds, "if there should be two slave children born of my blacks, then, at that time, the negroes to be given up to the heirs, as I have directed."   In the next and last item, immediately succeeding the above quotation, he says: "Item 14th. It is my desire, if my widow do marry, the negroes shall be given up to the heirs, as I have directed ; and if there is one slave only born, Hannah shall be sold ; if two slave children, Prudence shall be sold also, with all the rest of the property, and the money divided equally with the heirs; and if my widow do not marry, she is to retain all the negroes and property during her natural life.   N. B. When there are two slaves born, then the young negroes shall be divided with the heirs ; if there is not two, the widow must retain all until her marriage, and if she does not marry, she shall retain all during her natural life."

The concluding clause seems, when taken in connection with other provisions, clearly to indicate the intention of the testator to allow his widow to keep the negroes during her life or widowhood.   This provision for her, from the oft-repeated allusions to it, shows that it was his leading intention to postpone for her benefit the possession of his other legatees; and if there were other clauses in the will repugnant to it, as it comes last, they must give way.

As, then, the will looks to a future uncertain period, when the property bequeathed shall vest in possession, it cannot be said with legal accuracy that the testator did not mean what he said when he used the term " children"; for by the time the property should vest in possession, each of the legatees might have had children.   At all events, there was a possi-

bility of issue, and this is sufficient for the present argument. We do not, therefore, think that the testator used the term "children" in any of his bequests as a word of limitation.— He intended, if there were children when the property fell into possession, for them to take a joint interest with their parent.—2 Powell on Devises, 303; 2 Mod. 104; 1 Ves. 111.

So far as I have been enabled to trace the authorities, the term " children" has uniformly been construed in its natural, common-law import, unless in cases where departures have been indulged by courts astute to carry out the supposed intention of the testator, and to prevent a total failure of the bequest in favor of the children. In Buffar v. Bradford, 2 Atk. 220, Lord Hardwicke said : "It must be allowed that 'children,' in their natural import, are words of purchase, and not of limitation, unless it is to comply with the intention of the testator, *where the words cannot take effect in any other way.*" See, also, Hatterly v. Jackson, 2 Str. 1172.

In respect to the particular clause under consideration, this reasoning would be inapplicable, as here the daughter had children when the will was made, and when the property, by its terms, vested in possession, and there is no reason why the intent to give an interest to the children jointly with the daughter should not prevail.—Keyes on Chattels, § 227. We have alluded to the terms employed in other portions of the will, because they are urged, and we think properly, as exponents of this, it being improbable that the same words, occurring in like connection, and apparently intended to accomplish similar objects, should have been intended by the testator to be understood differently.

We concede, that there is some force in the argument, that as the child to be substituted in lieu of Hannah, should one be born, should go to the daughter individually, we should the more readily construe the words giving Hannah as conveying the entire property to the daughter ; but we do not think this sufficient to control the express and direct gift to the children, who were *in esse* and capable of taking. We cannot undertake to say that the testator might not have meant to give the woman to the daughter and her children, and the child to the daughter only. Nor will we forestall the inquiry, whether, amid the use of such a jargon of inapt

expressions, the testator did not intend that the children should share with the parent a joint interest in the child to be substituted in lieu of Hannah, in the event of the birth of one. Be this as it may, it should not be allowed to defeat the plain gift to the mother and children. They took a joint interest in the slave Hannah and her increase. Such, we apprehend, is substantially the rule to be gathered from several of our own decisions, which bear more or less directly upon this point.—Nimmo v. Stewart, 21 Ala. 682 ; Cook & Mitchell v. Lewis, 16 *ib*. 68 ; Fellows *et al*. v. Tann, 9 *ib*. 999 ; Jasper & Maclin v. Howard, trustee, 12 *ib*. 652 ; Rugeley *et al*. v. Robinson, 10 *ib*. 737.

As respects the interest of the deceased infant child of the testator's daughter, several decisions of this court show, that in a proceeding of this character, there being no debts chargeable on the property, there is no need of an administration.—16 Ala. 494 ; 20 *ib*. 482 ; 5 *ib*. 315 ; 11 *ib*. 614.

Our conclusion is, that the decree of the chancellor is erroneous. It must therefore be reversed, and the cause must be remanded, that a decree may be rendered in conformity to the views above expressed.