## Massingale, et al., By, etc. v. Parker.

(Decided January 27, 1922.)

### Appeal from Whitley Circuit Court.

1. Deeds—Construction.—In interpreting a deed, if from the whole instrument it is shown or may be fairly inferred that certain words or expressions therein were used in any particular sense or should be interpreted to mean any particular thing, then that purpose will be effectuated and the instrument construed to mean what the, parties intended without regard to the technical interpretation of the language used.

2. Deeds—Construction.—But if there is nothing in the instrument as a whole which shows the words were used in any particular sense or were intended by the parties to have any certain meaning, then they will be interpreted in their technical sense and given the meaning which it must be presumed the parties intended.

3. Deeds—Construction.—In a conveyance by a father and mother to their daughter where the consideration is recited as "love and affection" and that the property conveyed to the child is to be accepted as her entire interest in the estate, of her father, such recital is evidential of a purpose to convey the fee, simple to the daughter.

4. Deeds—Construction.—The use in the instrument of the words "parties of the second part" at one place and the words "party of the second part, their heirs and assigns" at other places in the instrument, shed no controlling light upon the sense in which other language therein used should be interpreted.

5. Deeds.—A conveyance by a father and mother to their daughter and the "offsprings of her body" is the creation of an estate tail and under our statute, which converts the same into a fee simple, the daughter took the fee simple title.

6. Deeds—Construction.—The word "offspring" as used in the instrument is synonymous with "issue," "progeny" or "lineal descendants," even to the remotest degree.

7. Deeds—Offspring.—The words "offspring" or "issue" while they include "heirs" and "heirs of the body," are much more comprehensive terms, and embrace a much larger class.

E. B. SNYDER for appellants.

H. C. GILLIS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

On the 21st of September, 1909, Mark White and his wife executed and thereafter delivered to their daughter,

Louise Massingale, the following deed for a house and lot in Williamsburg, Kentucky.

"This deed of conveyance, made and entered into this 21st day of September, 1909, between Mark White and Millie White, his wife, parties of the first part, and Louise Massingale, and the 'offsprings of her body' parties of the second part,

"Witnesseth:

"That said parties of the first part, for and in consideration of the sum of $1.00 cash in hand paid and for the love and affection we have for our daughter, and for the further consideration that the property hereinafter described and conveyed shall be and is her entire interest both personal and real in the estate of Mark White, her father, do hereby sell and convey to the party of the second part, their heirs and assigns, the following described property, to-wit: (Description omitted.)

"To have and to hold the same, together with all the appurtenances thereunto belonging unto the party of the second part, their heirs and assigns forever, and the said party of the first part hereby covenants with the said party of the second part that they will warrant the title to the property hereby conveyed unto the said party of the second part and their heirs and assigns forever."

Thereafter, in August, 1914, Louise Massingale, assuming to be the owner of the house and lot in fee, conveyed same to Estis, who subsequently conveyed to appellee Parker.

This is an equitable action by Parker against the children of Louise Massingale wherein it is alleged that the defendants are claiming an interest in the property under the terms of the deed quoted and praying that it be adjudged that they have no such interest and that his title thereto be quieted as against them.

The defendants are all nonresident infants, but through a resident next friend designated by their parents have filed an answer and counterclaim in which they assert that under the terms of the deed from Mark White and wife above quoted their mother, Louise Massingale, only took an undivided one-sixth interest in the property therein conveyed, and that the five infant defendants, her children, are the owners of the other five-sixths thereof, and that under the deeds from their mother to Estis and from Estis to Parker the latter only took title to such one-sixth undivided interest.

A demurrer was filed to the answer and counterclaim and the lower court upon consideration sustained the same, and the defendants declining to plead further, their counterclaim was dismissed and the title of the plaintiff, Parker, quieted to the house and lot in question and the infant defendants have appealed.

If from the whole instrument it is shown, or may be fairly inferred, that the words "offsprings of her body" were used in any particular sense, or should be interpreted to mean any particular thing, then under the rule in this state that purpose will be effectuated and the instrument construed to mean what the parties intended it to mean without regard to the technical interpretation of the language used. But if, on the contrary, there is nothing in the instrument as a whole which shows those words were used in any particular sense or were intended by the parties to have any certain meaning, then they will be interpreted in their technical sense and given the meaning which it must be presumed the parties intended.

There is nothing in the deed which sheds any particular light upon what was in the minds of the parties except that in reciting the consideration for the deed from the parents to the daughter it is given as "love and affection we have for our daughter and for the further consideration that the property hereinafter described and conveyed shall be and is her entire interest, both real and personal, in the estate of Mark White, her father;" and again, in the early part of the instrument setting forth the parties thereto it uses the term "parties of the second part," and in the granting clause it conveys "to the party of the second part, their heirs and assigns;" and again in the habendum twice uses the words "party of the second part, their heirs and assigns."

We cannot perceive how in a conveyance by parents to a child where the consideration is stated as "love and affection" and that the property conveyed is accepted by the child as her entire interest in the estate of her father can be treated as evidence of a purpose by the grantors to convey her less than a fee simple title; for if the child is to accept the property conveyed as its full prospective part of the parents' estate the fair interpretation would be that it was the purpose of the parent to convey the fee simple title rather than a less estate. It is not to be presumed that the child under such circumstances would accept a conveyance in full of her prospective interest

in her father's estate which only gave her a one-sixth interest in the property or an interest for her life only, and, on the whole, while it is by no means controlling, this provision is strongly suggestive of an intention upon the part of the grantors to convey, and upon the part of the grantee to receive under the deed, the fee simple title.

As to the use of the words "parties of the second part" and "party of the second part, their heirs and assigns," it will be seen that sometimes the plural and sometimes the singular was used, and considering the manner in which these terms were used throughout the instrument, we have been unable to see that they shed any controlling light upon the correct interpretation of the language "the offsprings of her body" or the sense in which the parties used them, and it is our conclusion on this branch of the case that there is nothing in the instrument from which it may be fairly inferred that the parties used that language in any other than its technical sense.

If, then, it may not be ascertained from the provisions of the instrument that the words "the offsprings of her body" were used by the parties in any sense other than their technical meaning, it remains to determine what their technical meaning is and what effect must be given to their use in that sense.

Webster says that "offspring" means progeny; issue; child or children; descendant or descendants.

Bouvier says, volume 3, page 2410, that in its proper and natural sense the word extends to any degree of lineal descendants and has the same meaning as issue, and refers to 32 L. J. Ch. 373. Black says that it is synonymous with issue.

In the case of Barber v. Pittsburgh, etc. Railway, the Supreme Court of the United States, in interpreting the provision of a will that "in the event of Amanda dying unmarried, or, if married, dying without offspring by her husband," said that the word "offspring" was used as a synonym for "issue."

In the case of Allen v. Markle, 36 Pa. 117, there was a devise by a testator to his son for life "and at his decease to descend to his legitimate offspring forever," and "in case the said Boston's issue becomes extinct the land shall go over to devisees named in the will," and the court held that the word "offspring" was synonymous

with issue and was a word of limitation, and the estate of the first taker was an estate tail which, being barred by statute, gave him the fee simple.

In the case of Powell v. Brandon, 24 Miss. 343, there was a devise directing a trustee to put the *cestui que trust* into possesion of the estate and (2) "permit him to have, occupy, work and enjoy the same during his natural life and in trust after his decease, to put and continue in possession of the estate the lineal descendants of the *cestui que trust* to the latest posterity," and the court held that this created an estate tail for the first taker and under the operation of the statute in that state vested him with the fee simple title.

In the case of Dempsey v. Davis, 98 Ark. 570, the grantors conveyed to their daughter "and her children, the natural offspring of her body" a tract of land and the court held that it was an estate tail and under a statute in that state the grantee took a life estate and the person or persons to whom the estate tail would first pass at common law took the remainder estate.

Under these definitions and opinions from other states it is apparent that the word "offspring" in the absence of something in the instrument pointing to a different meaning must be held to be synonymous with issue, progeny or descendants or lineal descendants, and giving it that meaning it is perfectly clear that the instrument involved created an estate tail which under our statute is converted into a fee simple.

But we are not without authority in Kentucky pointing unmistakably to the conclusion that the word "offspring" means issue. In the case of Black v. Cartmel, 10 B. M. 188, the testator devised a certain estate to his daughter during her life "and if she die without lawful issue of her body then the said estate is to pass and vest, by this will, in my lawful heirs." In considering what the words "lawful issue" meant the court said:

"But upon further consideration, we are inclined to think the position referred to was erroneous in regarding the terms 'lawful issue' as in all respects equivalent to the terms 'lawful heirs of her body.' The word heir or heirs, is wholly technical, meaning the person or persons who may by law inherit. The words 'heirs of the body,' are equally technical, meaning such of the issue or offspring as may by law inherit. And it is only by a liberal and indulgent construction, indicated by the con-

text or by circumstances, that either of these expressions is held to mean children or grandchildren. The word issue is not wholly technical, but has a natural significa- tion and common use, including all the offspring or de- scendants of the person, whether heirs or not. It is therefore not identical with 'heirs of the body.' But al- though it always includes them, it is not confined to them. In its natural and common use, it means descendants or offspring, and as the phrase 'lawful descendants or off- spring,' would clearly exclude illegitimate, or unlawful descendants, or offspring, although they might inherit; so, although the word issue is often used and understood as equivalent to 'heirs of the body,' still, as it has also a natural signification and common use, precisely equiva- lent to descendants or offspring, the fact that an illegiti- mate child may inherit from its mother, seems hardly to be a sufficient ground for saying that he is embraced in the words 'lawful issue,' as he certainly would not be in the words 'lawful descendants.' "

It will be seen from the above quotation that this court has used the word "issue" and the word "off- spring" interchangeably, that is, as synonymous terms; not only so, it is apparent from the case quoted from, as must be admitted, that the words "issue" or "offspring," while they include "heirs" and "heirs of the body," are much more comprehensive terms and embrace a much larger class. As pointed out in the opinion the words "heirs" or "heirs of the body" include only such per- sons as are capable of inheriting, while the words "issue" or "offspring" embrace all lineal descendants to the remotest degree whether capable of inheriting or not. But if the words "offspring of her body" should be treated as synonymous with "heirs of her body," the result would be the same. For, in many cases this court has held such words, and words of similar import, to be words of limitation and not of purchase in the absence of something in the instrument showing a different purpose. Scearce v. King, 186 Ky. 507.

The language used in the deed created an estate tail which by our statute (section 2343) is converted into a fee simple, and therefore Louise Massingale took the fee under the deed from her father and mother.

Judgment affirmed.