251 So.2d 216

Bessie L. ARMSTRONG, et al.

v.

Cynthia Elizabeth Lucas SMITH.

4 Div. 397.

Supreme Court of Alabama.

July 29, 1971.

Tipler, Fuller & Melton, Andalusia, for appellants.

Lewis V. Chesser, Andalusia, for appellee.

COLEMAN, Justice.

Respondents appeal from a decree favorable to complainant in a suit to determine title to land.

The dispute is between a mother, the complainant Cynthia Elizabeth Lucas Smith, and her four children who are all over the age of twenty-one years and are the respondents.

The subject matter of the suit is fifty-seven acres of land in Covington County. The complainant contends that she owns the entire interest in the land in fee simple. The respondents allege:

"A.  They are the only off springs of the complainant and her first husband; that she has since married another.

"B.  That their grandfather deeded the property involved in this case to them and their mother with the provision that the property not be sold or mortgaged during the life time of their mother and each of the respondents and cross com-

plainants own a one-fifty undivided interest in said property and one-fourth of the remainder of one-fifth undivided interest.

"C. That the complainant is under the influence of her present husband who wants to squander the property."

It was stipulated that "all parties on both sides want the Court to interpret this deed and determine the exact ownership of the land." No witness testified. The court decreed that complainant is the owner of the land in fee simple and enjoined respondents from interfering with complainant in the peaceful possession of the land.

As pertinent, the deed recites:

"KNOW ALL MEN BY THESE PRESENTS that we Andrew Jackson Lee and wife Nancy Jane Lee for and consideration of the love and affection we bare (sic) towards our beloved daughter Cynthia Elizabeth Lucas and her offsprings, do hereby give, grant and convey unto our said daughter and offsprings or heirs the following described lands or real estate, V. S.

"(Description omitted)

"TO HAVE AND TO HOLD the same unto said Cynthis Elizabeth Lucas and her said offsprings. To have and to hold the same forever.

"Be it known this land is not to be mortgaged or sold."

The date of the deed is April 18, 1925.

We assume that some or all of the respondents were in existence at the effective date of the deed because, if complainant had no child in being at that date, it seems clear beyond question that respondents can take nothing by the deed.[1]

The decision on this appeal must depend on the construction of the deed and the meaning given to its terms, particularly the expression "offsprings or heirs."

Respondents say that the instrument bears on its face evidence that it was drawn by one who was not skilled in the use of legal terms, and the language of the deed appears to support this insistence of respondents. They insist further that, because the instrument bears the marks of an unskilled draftsman a greater latitude of construction must be indulged than would be allowed in construing an instrument which appears to have been drawn by a skilled draftsman, citing Hamner v. Smith, 22 Ala. 433; Campbell v. Gilbert, 57 Ala. 569; and Gamble v. Gamble, 200 Ala. 176, 75 So. 924, among other cases. Complainant does not appear to disagree with the insistence that the deed indicates the unskillfulness of the draftsman or that a liberal construction should be indulged. Indulging a liberal construction, however, does not appear to establish the conclusion for which respondents contend; to wit, that the word "offsprings" is to be construed as a word of purchase and not as a word of limitation.

The word "offsprings" appears three times in the deed. First, the grantors say that they make the conveyance "for and consideration of the love and affection we bare (sic) toward our beloved daughter Cynthia . . . . and her offsprings." Second, the conveyance is to "our said daughter and offsprings or heirs," thereby indicating that "offsprings" is equivalent to or a synonym for "heirs," but this does not require that "heirs" be given its technical meaning. Third, the habendum is to "said Cynthia . . . . and her said offsprings," referring, it must be, to the

---

1. In Gilchrist v. Butler, 214 Ala. 288, 290, 107 So. 838, the devise was to "John A. Gilchrist and his children." This court said:

"Under the doctrine of Wild's Case, 6 Coke Rep. 17; 10 Eng.Rut.Cas. 773, it is clear that the children of John A. took nothing by the will (Shuttle &

' Weaver Land Co. v. Barker, 60 So. 157, 178 Ala. [366], 372; Vanzant v. Morris, 25 Ala. 285), because John A., at the time of the devise, had no children. The statute converted the common-law estate tail thus created into a fee in the first taker. Code 1923, § 6901."

"offsprings or heirs" just mentioned in the granting clause.

The question is, did the grantors intend that the grant be to Cynthia and the particular persons who were her children living at the effective date of the deed; or, did the grantors intend that the grant be to Cynthia and that class of persons who at some indefinite time would be embraced within the description "offsprings or heirs"?

If the construction be that by "offsprings or heirs" the grantors intended to designate only those individuals who were the living children of Cynthia at the time of execution of the deed, then, according to the decisions of this court, Cynthia and her children then living took an estate as tenants in common. Moore v. Lee, 105 Ala. 435, 17 So. 15.[2]

In designating the grantees, however, the grantors did not use the word "children." Moreover, the grantors referred to "offsprings," the word they did use, as the equivalent of "heirs."

Immediately following the statement, "To have and to hold the same forever," the grantors inserted the following command:

"Be it known this land is not to be mortgaged or sold."

From all the provisions of the deed, what is the reasonable construction of the meaning to be given to the words used to designate the grantee? Did the grantors intend that the grantee be only the daughter, Cynthia, and her children living at the date of the deed, or, did the grantors have in mind that the grantee should be not only Cynthia but also her "offsprings" into the indefinite future?

If the grantors, by conveying to "our said daughter and offsprings or heirs" intended to vest an estate in fee simple in

Cynthia and her then living children as tenants in common, why did the grantors, in the habendum, say to have and to hold to Cynthia and her said offsprings, but before expressing the quality of the estate or its duration, repeat the infinitives, "To have and to hold the same" before adding the customary "forever"? What intention is shown by the command perpetually forbidding alienation?

The reasonable inference appears to be that grantors' real intent was to create in Cynthia an estate tail to be enjoyed by her and her "offsprings" forever.

Respondents cite McGuire v. Westmoreland, 36 Ala. 594, in support of the proposition that "offsprings" means children. In McGuire, there was a bequest of slaves to Lucy Westmoreland so long as her existing marriage continued with gift over, on dissolution of the marriage, "'  . . . . to the present and future children, the offspring of the said marriage between said Edwin B. and Lucy Westmoreland, that may be living at the time of the happening of such dissolution of marriage.'" This court held that the word "children," as there used, did not include grandchildren, and that the words "the offspring of," as used in the will, did not enlarge the ordinary meaning of the word "children." In the instant case, the word "children" is not used and McGuire is of no assistance.

Respondents cite also Duncan v. De Yampert, 182 Ala. 528, 62 So. 673, where this court said:

" . . . . The legal construction of the word 'children' accords with its popular signification; namely, as designating immediate offspring. 2 Jarman, 1000."

Here again the word "children" was being construed. It may well be conceded that generally "children" means immediate offspring, but that concession does not require

2. " . . . . The rule of law is that a conveyance to 'A' and his children, if 'A' have children at the time of the conveyance, the children take jointly with the parent, and after born children are

excluded. Vanzant v. Morris, 25 Ala. 285; Varner v. Young's Ex'rs, 56 Ala. 260; Mason v. Pate's Ex'r, 34 Ala. 379; Williams v. McConico, 36 Ala. 22." (105 Ala. at 439, 17 So. at 16)

that the meaning of "offspring" be limited to lineal descendents of the first degree; i. e., immediate offspring.

We are not advised of any decision of this court construing the terms "offsprings" or "offsprings or heirs" when used in a deed as in the case at bar. A few similar cases decided by other courts appear appropriate for mention.

In considering the effect of a statute on the rule in *Shelley's* case, the Mississippi court, referring to the common law rule, said:

"   .   .   .   The courts at length reached this result; that the words 'heirs, heirs of the body, issue, offspring,' &c. in their appropriate signification, embraced any heirs of the given description, collectively as a class of persons, unless there was a direct intention plainly and clearly expressed to the contrary; for if that intention clearly appeared, the rule was not so strict as to control that intention, if it steered clear of the reason of the rule or of its literal terms. 1 Preston on Es. 275, 278, 279. . . . ." Powell v. Brandon, 24 Miss. 343, 365.

In construing a will devising land to Amanda Stephens, which will provided that in the event of her "   .   .   .   'dying unmarried, or, if married, dying without offspring by her husband   .   .   .   '   .   .   .   ." then the lots were to be sold and the proceeds given to others, the Supreme Court of Pennsylvania concluded that: "   .   .   .   The word 'offspring,' here used, is but a synonym for 'issue;'   .   .   .   ." Mitchell v. Pittsburg, Fort Wayne & Chicago Ry. and the Penna. Co., 165 Pa. 645, 650, 31 A. 67, 68. In construing the same will, the Supreme Court of the United States said:

"(1) The word 'offspring' used in this clause of the will has the same legal significance as the word 'issue' used in similar clauses. (Citations Omitted)" Barber v. Pittsburgh, Fort Wayne and Chicago Ry. Co., 166 U.S. 83, 94, 17 S.Ct. 488, 41 L.Ed. 925.

In construing an earlier will the Supreme Court of Pennsylvania said:

"   .   .   .   The testator gives his real estate to his son 'during his natural life, and at his decease to descend to his legitimate offspring for ever.' He then directs that 'in case the said Boston's *issue* becomes extinct, the land shall go over to devisees named in the will.' The words 'legitimate offspring' and 'issue' are used interchangeably as having the same meaning, and if he had not defined the term 'offspring,' the law has, in repeated instances. It is regarded as *nomen collectivum*.

"Offspring then is a word of limitation, not of purchase. Those embraced in its meaning take by descent through Boston Burgett, not as primary objects of the testator's bounty. Of course the estate of the first taker was an estate tail, and it having been barred under the Act of Assembly, the plaintiff below had a title in fee simple." Allen v. Markle, 36 Pa. (12 Casey) 117, 118, 119.

The Court of Appeals of Kentucky construed a deed conveying real estate to "'   .   .   .   Louise Massingale, and the "offsprings of her body" parties of the second part.'" Louise Massingale was the daughter of the grantors. The Kentucky court held that the deed created in Louise Massingale an estate tail which was converted by statute into a fee simple. The court said that if from the whole instrument it may be fairly inferred that the words "offsprings of her body" were used in any particular sense, the instrument would be construed to mean what the parties intended; but, the court found nothing from which it may fairly be inferred that the parties used that language in any other than its technical sense. The court said:

"Webster says that 'offspring' means progeny; issue; child or children; descendant or descendants.

"Bouvier says (volume 3, page 2410) that, in its proper and natural sense, the word extends to any degree of lineal

descendants, and has the same meaning as 'issue,' and refers to 32 L.J. Ch. 373. Black says that it is synonymous with issue." Massingale v. Parker, 193 Ky. 523, 526, 236 S.W. 959, 960.

The Kentucky court then cited and considered Barber v. Pittsburgh, Fort Wayne and Chicago Ry. Co., supra; Allen v. Markle, supra; Powell v. Brandon, supra; and Dempsey v. Davis, 98 Ark. 570, 136 S.W. 975. The court then said:

"Under these definitions and opinions from other states, it is apparent that the word 'offspring,' in the absence of something in the instrument pointing to a different meaning, must be held to be synonymous with issue, progeny or descendants or lineal descendants, and, giving it that meaning, it is perfectly clear that the instrument involved created an estate tail, which, under our statute, is converted into a fee simple." (193 Ky. at 527, 236 S.W. at 960);

and also:

"It will be seen from the above quotation that this court has used the word 'issue' and the word 'offspring' interchangeably—that is, as synonymous terms—not only so, it is apparent from the case quoted from, as must be admitted, that the words 'issue' or 'offspring,' while they include 'heirs' and 'heirs of the body,' are much more comprehensive terms and embrace a much larger class. As pointed out in the opinion the words 'heirs' or 'heirs of the body' includes only such persons as are capable of inheriting, while the words 'issue' or 'offspring' embrace all lineal descendants to the remotest degree, whether capable of inheriting or not. But if the words 'offsprings of her body' should be treated as synonymous with 'heirs of her body,' the result would be the same. For in many cases this court has held such words, and words of similar import, to be words of limitation, and not of purchase, in the absence of something in the instrument showing a different purpose. Scearce v. King,

186 Ky. 507, 217 S.W. 366." (193 Ky. at 528, 236 S.W. at 961)

Nothing in the instant deed to complainant persuades that the grantors used the terms "offsprings" or "offsprings or heirs" in a sense which restricts the ordinary meaning of the terms so that only the four children of complainant were intended, with the result that complainant would take an undivided one-fifth interest as a tenant in common with her children.

Complainant took an estate in fee simple, or at the least an estate in fee tail converted by statute into a fee simple, unencumbered by any estate in her children.

Affirmed.

HEFLIN, C. J., and SIMPSON, BLOODWORTH, and McCALL, JJ., concur.