# Duncan *v.* De Yampert, *et al.*

## *Ejectment.*

(Decided June 19, 1913. Rehearing denied June 30, 1913.
62 South. 673.)

1. *Wills; Construction; Estate Devised.*—Where a will devised land to a son of the testator to be held during his natural life, and at his death to be equally divided between the heirs of his body, but in the event such son should die without leaving a child or children, the son was to have the right to dispose of the land "herein devised to him, and the heirs of his body" as he should see fit, the children of such son took an estate in remainder as a class; the term "children and heirs of the body" being used indiscriminately to denote the same class of persons.

2. *Same; Time of Vesting.*—Estates will vest at the earliest possible moment, and an intent to postpone the vesting of an estate must be clearly established and not arise merely by inference.

3. *Same.*—A limitation will not be construed as an executory devise when it can take effect as a remainder; nor will a remainder be construed to be contingent when it may be construed as vested.

4. *Same; Vested Remainder.*—A remainder will be construed as vested although all the persons who may take are not in being or then ascertainable, where the devise of a remainder is to a class, such as "the children of a certain person, some of whom are living at the time of the testator's death."

5. *Same; After Born Children.*—Where the testator devised land to his son to be held for life with the provision that at his death the land should be equally divided between the heirs of his body, and in the event he should die without children he should have the right to dispose of the same as he saw fit, the children of such son born after the testator's death came in as members of the class to whom the remainder was given.

6. *Same; Remainder.*—Under the will in this case the provision giving the devisee power to dispose of the estate in the event he died without children did not destroy the previously vested remainder of those children who might die pending the life estate.

7. *Same; Construction.*—The court cannot invest or add to the legal meaning of the words of the will unless it clearly appears that to do so would effectuate the intentions of the testator.

8. *Same; Estate Devised.*—Where an interest is clearly devised in one clause of the will it can only be cut down or destroyed by a subsequent clause clearly having that effect.

9. *Same; Children.*—As ordinarily used in the devise, the legal meaning of the word "children" is the same as its popular meaning. designating immediate offspring.

(McClellan, J., dissents.)

APPEAL from Perry Circuit Court.

Heard before Hon. B. M. MILLER.

Ejectment by F. P. Duncan against L. P. deYampert, and others. Judgment for defendant and plaintiff appeals. Reversed and remanded.

GEORGE D. MOTLEY, for appellant. The indiscriminate use of the words "heir" and "children" show that the draughtsman was unskillful and that they were used to designate the same class of persons.—*May v. Ritchie,* 165 Ala. 602; *Campbell v. Noble,* 110 Ala. 382; *Watson v. Williamson,* 129 Ala. 362; *Findlay v. Hill,* 133 Ala. 229. Under this will, the class designated took on the expiration of a particular estate from the donor and not from the tenant.—*English v. McCrary,* 157 Ala. 487; *Dunn v. Davis,* 12 Ala. 135; *Shackelford v. Bullock,* 34 Ala. 418; *Sheperd v. Nabors,* 6 Ala. 631; *Twelves v. Neville,* 39 Ala. 175; *Roberts v. Ogburn,* 37 Ala. 174; *Williams v. McConnico,* 36 Ala. 22, and authorities supra. Under the will the first taker had a life estate with the remainder to his children.—*May v. Ritchie, supra; Campbell v. Noble, supra; Sullivan v. McLaughlin,* 99 Ala. 60; *Guesnard v. Guesnard,* 55 South. 524. The heirs of the body as used in this will was synonymous with the word "'children" and the remainder over was good.—*Powell v. Glenn,* 21 Ala. 458; *Bethea v. Smith,* 40 Ala. 415; *Blakeny v. DuBose,* 167 Ala. 627. Remainders will be construed as vested rather than contingent.—*Crawford v. Ingram,* 153 Ala. 425; *Bethea v. Bethea,* 116 Ala. 271; *Acree v. Dabney,* 133 Ala. 437; *Kumpe v. Coons,* 63 Ala. 448. A vested interest given to children is not to be divested by a gift over if the parent dies without leaving children.—4 Supp. to A. & E. Enc. of Law, 1232. The right to the remainder vested in the children as they were born,

and their interest vested in their heirs if any of them died before the determination of the life estate.—3 A. & E. Enc. of Law, 783; 14 B. Monroe 140; 43 S. W. 426; 5 Dana 438; *Crawford v. Ingram, supra; Pearce v. Folmar*, 165 Ala. 344. Plaintiff inherited through his daughter who inherited through her mother.—Sec. 3754, Code 1907; *Fowler v. Trewhit*, 10 Ala. 622; *Andrews v. Russell*, 127 Ala. 195; *Blakeny v. DuBose, supra*.

R. B. EVINS, W. F. HOGUE, and C. C. JOHNSON, for appellee. The intention of the testator as expressed in the language of the will is the cardinal rule of interpretation.—30 A. & E. Enc. of Law, 661, et seq. The use of technical terms by a testator is presumed to be in their technical sense.—30 A. & E. Enc. of Law, 671; 2 Jarman on Wills, 280-4, and cases cited; *Phinizy v. Foster*, 90 Ala. 264; *Inge v. Jones*, 109 Ala. 178; *VanZant v. Morris*, 25 Ala.; *Jemison v. Smith*, 37 Ala. 198; *Mason v. Pate*, 34 Ala. 379; *Elmore v. Mustin*, 28 Ala. 309. Even it should be held that plaintiff's daughter took a vested remainder, his case is destroyed by the doctrine announced in *Smaw v. Young*, 109 Ala. 528, and authorities cited supra.

SAYRE, J.—This is an action of ejectment to recover an interest in the Valola plantation in Perry county. L. Q. C. DeYampert, the former owner, died in 1867 leaving a will by which he disposed of the property. Omitting some complications which are of no consequence in this connection, but following the language of the will in all other respects, the item of the will in dispute may be stated as follows: "I devise to my son Asberry H. De Yampert my Valola Plantation, to be held by him for his use and benefit during his natural life, but at his death to be equally

divided between the heirs of his body, but should he
die without leaving a child or children, in that event he
shall have the right to dispose of the lands herein devis-
ed to him and the heirs of his body in any manner he
may see fit." Asberry died in 1908 leaving surviving
him two sons, the defendants. At the time of L. Q. C.'s
death, Asberry had also a daughter, Linda, who inter-
married with plaintiff (appellant) in 1878. Of that
marriage a daughter, Inez was born in 1879. Linda
died in 1880; Inez in 1882. All parties claim under
the will; defendants claiming directly, plaintiff claim-
ing as the heir at law of his wife through his daughter.

Asberry took as tenant for life—this much will not
be denied. He had a power of disposition in a certain
event, but that event did not happen, and so, for rea-
sons to be stated hereafter, that power may be dismiss-
ed from consideration except for such aid as the lan-
guage used in creating it may afford in ascertaining the
meaning the testator attached to the words "the heirs
of the body" in the expression of the devise under which
the parties claim. Resorting to it for that purpose only,
it is made to appear that testator used the terms "chil-
dren" and "heirs of his [Asberry's] body" indiscrimi-
nately to designate the same class of persons. Using
the terms interchangeably, he had not in mind the
maxim Nemo est hæres viventis, for a child is a child
whether his parent be dead or alive. It must therefore
be held that testator's intention was to give an estate in
remainder to the children of Asberry.—*May v. Ritchie,*
65 Ala. 602, and cases there cited. Upon consideration
of the briefs filed at the original submission of this cause
we conceived that the parties were thus far agreed; the
argument being directed to the question whether upon
this interpretation the children of Asberry took vested
or contingent remainders.

Upon this interpretation of the will there could be little difficulty in determining that Linda took a remainder which vested in interest at the death of testator. The settled law is that a will speaks from the death of the testator, and that, in the absence of a clear manifestation of the testator's intent to the contrary, estates shall be held to vest at the earliest possible period. The intent to postpone the vesting of an estate must be clear, and must not arise by mere inference or construction. "The law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested."—*Doe v. Considine,* 6 Wall. 476, 18 L. Ed. 869; *Bruce v. Bissell,* 119 Ind. 525, 22 N. E. 4, 12 Am. St. Rep. 436. "Where a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event that must unavoidably happen by the efflux of time, the remainder vests in interest as soon as the remainderman is in esse and ascertained; provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession."—*Doe v. Considine, supra; Blanchard v. Blanchard,* 1 Allen (Mass.) 227. There is a class of cases in which a remainder is regarded as vested, although all the persons who may take or not ascertained or in esse, and cannot be until the happening of some future event. "And that is where there is a devise of a remainder to a class of which each member is equally the object of testator's bounty, as to 'the children' of a person, some of whom are living at the testator's death."—2 Wash. Real Prop. (5th Ed.) § 1545. Our cases have followed these principles.—*Smaw v. Young,* 109 Ala. 528, 20 South. 370; *Acree v. Dabney,* 133 Ala. 437, 32 South. 127, and cases

cited. The question who are to take by enjoyment of the possession in such cases is not to be confounded with the question as to when the estate given vests in the donees. It is perfectly consistent with the vesting of the estate at the death of testator that the class may open to let in after-born children, as testator here no doubt intended should be the case in the event children should be afterwards born to Asberry.—2 Jar. Wills (6th Am. Ed.) marg. p. 1011, note 2. This rule is everywhere followed, and has been observed in a number of our cases, including *Inge v. Jones,* 109 Ala. 178, 19 South. 435, cited by appellees. So, also, speaking of devises to children (grandchildren in this case) as a class, Jarman says, "that all who have existed in the interval between the death of the testator and the period of distribution, whether living or dead at the latter period, are objects of the gift, and may therefore not improperly be termed objects at that period; their decease before the period of distribution having no other effect than to substitute their respective representatives, supposing, of course, the interest to be transmissible."— Page 1033. This is the common rule of the decided cases.—*Doe v. Perryn,* 2 Term Rep. 484; In re Roberts (1903) 2 Ch. 200; *Byrnes v. Stilwell,* 103 N. Y. 453, 9 N. E. 241, 57 Am. Rep. 760; *Weston v. Foster,* 7 Metc. (Mass.) 297; *Dole v. Keyes,* 143 Mass. 237, 9 N. E. 625; *Budd v. Haines,* 52 N. J. Eq. 490, 29 Atl. 170; *Yeaton v. Roberts,* 28 N. H. 459; *Tindal v. Neal,* 59 S. C. 4, 36 S. E. 1004; *Hovey v. Nellis,* 98 Mich. 374, 57 N. W. 255; *Gates v. Seibert,* 157 Mo. 254, 57 S. W. 1065, 80 Am. St. Rep. 625; *Bruce v. Bissell,* 119 Ind. 525, 22 N. E. 4, 12 Am. St. Rep. 436; *McArthur v. Scott,* 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015. It follows that by the devise to the children of Asberry, his daughter Linda, in the circumstances which have been stated, took a trans-

missible estate in remainder, which vested upon the death of testator. It seems to us that the fundamental error of appellees' argument on this point lies in the assumption that because the enjoyment of the estate in remainder was postponed until the preceding particular estate should determine—a necessary arrangement where antecedent particular estates are created—therefore the estate in remainder did not vest upon the death of testator, but continued in abeyance pending the prior estate.

But appellees, referring to that clause of the will, as we have quoted it, which provided that if Asberry should die leaving no child then he might dispose of the property according to his own notion, contend that the gift over was to children living at his death, and none other. Necessarily, in view of the res gestæ of the will and the language employed, testator intended that his son Asberry should have the power of disposition only in the event he left no children living at the time of the latter's death. That event did not happen, as we have seen, and the question is whether, by giving to Asberry the power of disposal in a named contingency, not certain to happen, testator intended to destroy the previously vested estates of those children of Asberry who might perchance die pending the life estate. Possibly the testator took no thought of that precise contingency. At any rate, the language used made no provision for it. And we are not to proceed upon conjecture, but on the words of the will. We cannot reject or add to the legal meaning of the words used unless it is clear upon the whole that to do so would give effect to the testator's intention. We have looked to the words used in creating the power of disposal in Asberry and the event in which it might be exercised as sufficient evidence that by "heirs of his [Asberry's] body" testator meant "chil-

dren." But it does not follow that by providing for the vesting of the power in a certain named contingency he intended to limit or destroy the estate in remainder in any other event or in any other circumstances. There is no expression of such intention, nor do we think it is reasonably to be inferred. "The rule is that where an estate or interest is given in one clause of a will, in clear and decisive terms, the interest so given cannot be taken away or cut down by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate."—*Bruce v. Bissell, supra.* The purpose of the language used in creating the power was not to define "heirs of the body" where these words occur in the devise of the estate in remainder. By it, however, testator unconsciously furnished dependable means of definition. But when he further provided, not for a presently determined limitation over, but by a provision in the nature of an executory devise, that in an uncertain event, to wit, if Asberry should die without children living at his death then he might dispose of the property, he furnished no clue for the inference that, if Asberry died leaving children surviving him, then the estate previously given to his children as a class equally should be limited to those then alive to the exclusion of the representatives of those who may have died in the interval. To so hold would be to speculate simply, and the only safe course is to follow the words used in the particular provisions. Not only would a conclusion in accord with appellees' contention find no logical support in the language used, as we view it, but, if such was the testamentary purpose, its clear expression in the clause creating the remainder; as by the use of the words "surviving" or "then living" would

have been so easy and natural that we cannot suppose that it escaped the mind of a devisor who was at great pains to provide for grandchildren along with wife and children, as those elaborate provisions of the will which we have not quoted abundantly show.

Appellees, referring to those quasi feudal institutions under the influence and operation of which testator had lived and acquired a large landed estate, suppose he must have intended to confine the transmission of his property to his own blood. That is a natural and proper inference where there is room for inference, though the course of property may not be so directed beyond definite limitations. Testator did, however, so direct as far as he went, and he might have gone further, but in fact he did not look far enough into the future to serve appellees' purpose, he did not provide for a generation more remote than his own grandchildren; the rest he left to such dispositions as the general law or his own devisees might make.

Now, however, in their latest brief, appellees seem to suggest that the remainder was not limited to the children of Asberry as a class, but to the broader class of his lineal descendants, or perhaps, to make the class definite, to children and grandchildren of Asberry. This, probably, to meet an inconvenience in which the argument against the vesting of the remainder might have resulted, viz., that Inez, though she had survived the tenant for life, and her mother Linda had died intestate, could not take, a result the testator most likely did not intend. But, as we think has fairly appeared, the terms used and the event provided for in giving the power of disposition to the tenant for life exclude that construction. The fact that the limitation over was to members of the class "equally" tends also to exclude that construction. The legal construction of the word "chil-

dren" accords with its popular signification; namely, as designating immediate offspring.—2 Jarman, 1000. That meaning may be controlled by the context, but there is nothing whatever of a substantial nature to indicate that testator, in providing for the power to be exercised by the life tenant in a certain event, did not use the words "child or children" in their primary and popular sense. While, therefore, it appears that testator made an inapt use of technical words in creating the estate in remainder, yet he used them in a sense which they not infrequently have among the unskilled. On the other hand, it must be presumed that in the executory provision he used the words "child or children" in the sense which accords with their primary technical as well as their popular meaning. These considerations have induced the conclusion, supported by the authorities first cited, that he intended the remainder for children merely. To hold otherwise would be to depart from the fair, reasonable, and most obvious import of the will as a whole, and that upon a speculation as to what testator would have provided had he undertaken to provide at all for the precise emergency which has arisen. It is not for us to make a will for the testator on such considerations; it is not for us to import words into the will on our notion of what the testator might have been expected to do; our only safe course is to follow the language we find, subject only to such modifications as are made necessary by the entire context. Doing so, we give effect to testator's intention as far as he expressed it. The rest must be left to the statute of descents, because testator so left it.

If the will had provided that the interests of testator's grandchildren should vest upon the happening of an uncertain event, as was the case in *Phinizy v. Foster,* 90 Ala. 264, 7 South. 836, or if—what would have

amounted to the same thing—it had provided that those of the definite class, Asberry's children, who should survive a named event should take, as was the case in *Smaw v. Young, supra,* to which we have referred for a definition of vested remainders, and as was the case in *Inge v. Jones, supra,* a different result would follow. In such case the interest given would have been contingent and not transmissible under the statute of descents. But that is not this case. Here the gift over was to a definite class on an event which was bound to happen, subject to divestiture as to all its members, not some of them only, in the event all of them, not some of them only, should die before the falling in of the life estate. The provision for grandchildren was, not that they should take upon the happening of an uncertain event, nor that survivors should take, but that they, all of them, should take an estate in remainder after a life estate, subject, upon an uncertain future event, to be defeated by the act of the life tenant—a contingent limitation conditioned upon an event unconnected with the original measure of their estate and which has not happened. It was competent for testator to create by devise a vested transmissible estate in his grandchildren, and yet so limit it that, upon the happening of some condition or contingent event, the estate so created should cease, and go over to another, or become subject to the disposal of another. The condition or contingency not having become operative according to the terms of the will, it can have no effect to divest the previously given estate of the grandchildren or any of them.

We are unable to see that the cases cited by appellees have any controlling influence upon the case here presented for decision. They either fall in a class with *Phinizy v. Foster* and *Smaw v Young,* to which we have

[Duncan v. De Yampert, et al.]

referred, or the language expressly fixed a point of time subsequent to the death of testator at which the estates in remainder should vest, with intervening contingencies—so in *Elmore v. Mustin,* 28 Ala. 309, and *Jemison v. Smith,* 37 Ala. 185, as we read them—or they are concerned about immediate gifts to a class—so in *Vanzant v. Morris,* 25 Ala. 285. Between immediate gifts to a class and gifts by way of remainder the books make necessary distinctions. Immediate gifts to a class vest in interest and in possession at the same time, and that is enough to distinguish them from the case in hand.

Our conclusion is that the general charge for appellees was improperly given. It was due appellant.

Reversed and remanded. All the Justices concur, except McCLELLAN, J., who dissents, and DE GRAFFENRIED, J., who did not sit.

McCLELLAN, J.— (dissenting).—In my opinion, the principles announced and approved in the following authorities require, when applied to the questioned clause of Mr. De Yampert's will, the conclusion attained and enforced by the trial court in this case:—*Smaw v. Young,* 109 Ala. 528, 20 South. 370; *Elmore v. Mustin,* 28 Ala. 309; *Jemison v. Smith,* 37 Ala. 198; *Vanzant v. Morris,* 25 Ala. 285; 30 Am. & E. Enc. of Law, 718, 721.