66 So.2d 740

**SPRINGER v. VICKERS et al.**

I Div. 472.

Supreme Court of Alabama.
June 30, 1953.

Rehearing Denied Aug. 11, 1953.

McCorvey, Turner, Rogers, Johnstone &
Adams, Mobile, for appellant.

Inge, Twitty, Armbrecht .& Jackson, V. R. Jansen, Joe C. Sullivan and John H. Tappan, Mobile, for appellees.

GOODWYN, Justice.

This is a proceeding to construe the will of Joseph A. Hynde, who, at the time of his death on November 11, 1934, was a resident of Mobile County. The body of the will, leaving out the property description, is as follows:

"State of Alabama,
"County of Mobile.

"Know All Men by These Presents, That I, Joseph A. Hynde, being of sound mind, do make and publish this, my last will and testament, hereby revoking all wills by me at any time heretofore made.

"As to my worldly estate, and all the real, personal or mixed property of which I shall die seized or possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the following manner;

"First: I give, devise and bequeath to Joseph L. Hermann, Jr. all my interest in the business of Hermann and Hynde, a co-partnership composed of Joseph A. Hynde and Joseph L. Hermann, Jr.

"Second: I give, devise and bequeath to Charles Ambrose Fletchinger, in fee simple, the following described real property situated in the City and County of Mobile, State of

Alabama to-wit: (Property description omitted.)

"Third: I give, devise and bequeath to Katie Hynde and Nellie Hynde, in fee simple, the following described real property, situated in the City and County of Mobile, State of Alabama, to-wit: (Property description omitted.)

"Fourth: I give, devise and bequeath unto Anna Norville Kern, in fee simple, subject to the life interest of Jennie Cotlin, the following described real property in the City and County of Mobile, State of Alabama, to-wit: (Property description omitted.)

"Fifth: I give, devise and bequeath to the Bishop of Mobile, Alabama, in fee simple, subject to the life interest of Mary A. Kearney, the following described real property, situated in the City and County of Mobile, State of Alabama, to-wit: (Property description omitted.)

"Sixth: I give, and bequeath to Springhill College located at Spring Hill, Alabama, the sum of Two Thousand Dollars ($2,000.00) to be paid out of my personal property with the request that masses by the priests of Spring Hill College be said for the repose of the souls of Joseph A. Hynde, and upon her death, Nellie Lucy Hynde. In the event that this bequest be held void under the laws of Alabama, because bequeathed for the purpose of having Masses said for the repose of the souls above mentioned, or for any other reason, then I desire to give and bequeath to Spring Hill College the sum of Two Thousand Dollars ($2,000.00) to be paid out of my personal property.

"Seventh: I give, devise and bequeath to my wife, Nellie Lucy Hynde, all of my personal property of every kind and description.

"Eighth: I give, devise and bequeath unto my wife, Nellie Lucy Hynde, our home at 1052 Dauphin Street, and also the lot in the rear, in fee simple.

"Ninth: I give, devise and bequeath all of my real property to my wife, Nellie Lucy Hynde, for her natural life, and, at her death, the same is to be divided among the following named persons, namely: Anna Norville Kern, Peyton Norville, William J. Norville, Joseph . H. Norville, Helen Norville Grayson, Rachel Norville Finkbohner, Mabel Hartwell Courtney, Genevieve Lucy Springer, Margaret V. O'Neill and Marion R. Vickers, all nieces and nephews of the testator, and N. L. Vickers, Jr., a grand nephew of the testator, and Anne Hartwell Johnson and Wallace Johnson, Jr., a grand-niece and grand-nephew, respectively, of the testator, the latter two named persons to take an undivided one-twelfth interest, being the same heretofore devised to Irma Hartwell Johnson, their mother, lately deceased. In the event that any of the parties above mentioned in this paragraph die prior to the above mentioned property vesting in them, then his or her share shall go to his or her children, if any, and if there are no children, then his or her share shall be equally divided among the surviving of the above named parties. In the event N. L. Vickers, Jr. dies prior to the above mentioned property vesting in him, and without any children, then his share shall vest in N. L. Vickers. In the event of the death of Anne Hartwell Johnson or Wallace Johnson, Jr., prior to the above described property vesting in them, and without any children, then his or her share shall vest in the survivor of them.

"Tenth: I do hereby give and bequeath to each of my executors, hereinafter named, the sum of One Thousand Dollars ($1,000.00) each in lieu, of any and all fees allowed to them by law, as compensation for acting as such executors.

"Eleventh: I do hereby nominate and appoint Nellie Lucy Hynde, Peyton Norville and Joseph L. Hermann, Jr. as my executrix and executors, respectively, of this my last will and testament, and I do hereby expressly ex-

empt them from giving any bond whatsoever as executrix and executors of this will. I do hereby nominate and appoint Marion R. Vickers as guardian for N. L. Vickers, Jr., and I do hereby exempt him from giving any bond whatsoever as such guardian. I do hereby nominate and appoint Wallace Johnson as guardian for Anne Hartwell Johnson and Wallace Johnson, Jr., and I do hereby expressly exempt him from giving any bond whatsoever as such guardian.

"I do hereby authorize my said executrix and executors to sell any personal property which I may own at the time of my death without obtaining any order of Court therefor. It is my desire that none of my real estate be sold, unless, in the opinion of my executrix and executors it is necessary or expedient, in which event, they shall be allowed to sell the same without obtaining any order of Court, and the proceeds therefrom shall be considered as real property for the purpose of distribution under this will.

"I do hereby authorize the guardian above appointed for N. L. Vickers, Jr., and likewise the guardian appointed for Anne Hartwell Johnson and Wallace Johnson, Jr., to sell any real or personal property which may vest in him as such guardian, without obtaining any order of Court therefor, and to join in any partition or division proceedings among the co-owners, without obtaining any order or authority from any Court therefor.

"In Witness Whereof, I, the undersigned Joseph A. Hynde, have to this, my last will and testament, contained in the foregoing three pages, subscribed my name and affixed my seal, this the 3rd day of March, 1934.

"(s) Joseph A. Hynde (Seal)"

The particular provision calling for construction is Item Nine. The other parts are pertinent only to the extent that they may be helpful in arriving at the testator's intent with respect to Item Nine.

The holding of the trial court is that under Item Nine Nellie Lucy Hynde, the wife of testator, took a life interest in the property therein devised, with vested remainders over to testator's nieces, nephews, grandnephews and grandniece named in the first sentence of Item Nine, with the nieces and nephews and N. L. Vickers, Jr., a grandnephew, each taking an undivided one-twelfth interest, and Anne Hartwell Johnson and Wallace Johnson, Jr., a grandniece and grandnephew, respectively, each taking an undivided one twenty-fourth interest.

All of the persons named in Item Nine were living at the time of testator's death. Nellie Lucy Hynde, the life tenant, died on August 15, 1950. The following of the named remaindermen died prior to the life tenant's death, viz.: Joseph H. Norville, Anna Norville Kern and N. L. Vickers, Jr.

The specific and decisive question presented is whether these deceased remaindermen acquired, at testator's death, a transmissible interest in the property, that is, an interest which was alienable, devisable and descendible. The lower court held that they did. Appellant insists it was the testator's intention to postpone vesting of the remainder interest until the death of the life tenant; that vesting of such interest was made contingent on the persons named as remaindermen surviving the life tenant.

We have been favored with helpful briefs. Our conclusion is, after full consideration of the arguments made, that the decree of the trial court is due to be affirmed. We see no escape from this conclusion when the will is considered in the light of recognized rules of construction.

One of the rules is thus stated in McCurdy v. Garrett, 246 Ala. 128, 129, 19 So.2d 449:

"'The settled law is that a will speaks from the death of the testator, and that, in the absence of a clear manifestation of the testator's intent to the contrary, estates shall be held to vest at the earliest possible period. The intent to postpone the vesting of an estate must be clear, and must not arise by mere inference or construction. "The law will not construe a limitation in a will into an executory devise

when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested." * * *.' Duncan v. De Yampert et al., 182 Ala. 528, 62 So. 673, 674."

To the same effect are the following cases, among others: Allen v. Maxwell, 249 Ala. 655, 660, 32 So.2d 699; George v. Widemire, 242 Ala. 579, 585, 7 So.2d 269; Pearce v. Pearce, 199 Ala. 491, 496, 74 So. 952.

The general rule in favor of early vesting of an estate is stated in 69 C.J., pp. 597–602, as follows:

"As the testator has the undoubted right, within legal limitations, to fix the time of vesting of any estate created by him, the question of whether or not in a given case a particular estate or interest is vested or contingent depends, in final analysis, upon the intention of the testator as gathered from the entire will. * * *.

"In accordance with the rules heretofore stated, a clearly manifested intention as to the time of vesting will prevail over the rules of construction in favor of vesting, but the law favors the early vesting of testamentary gifts. If a contrary intention does not clearly appear an interest will always be construed as vested rather than contingent, and to vest at the earliest possible time consistent with the testator's intention, so that if a contrary intention is not manifest the interest will usually be regarded as vesting immediately upon the testator's death. In other words, as the rule is sometimes expressed, the presumption is, and all doubts are resolved, in favor of vesting; and no estate or interest will be held contingent unless very decided terms are used in the will or it is necessary to so hold in order to carry out the other provisions or implications of the will. The intention to create a contingency must clearly appear for the courts will not construe the testator's words as importing a contingency if a different meaning can fairly be given to them. * * *"

The rule is thus stated in 33 Am.Jur., Life Estates, Remainders, and Reversions, Section 106, p. 563:

"In accord with the rule that the law favors the early vesting of estates, the rule is declared that an estate will vest at the death of the testator unless a later time for vesting is clearly expressed by the words of the will or by necessary implication therefrom. The law, it is said, presumes in favor of the vesting of remainders in interest on the death of the testator, if the language used is consistent with an intention to postpone the enjoyment only. This presumption is so favorably regarded that no remainder will be held contingent unless positive terms are employed in a will indicating that intention. The general principle is that any devise or bequest in favor of a person or persons in esse, whether such person be individualized or treated as a class, confers an immediately vested interest upon the death of the testator, although the time of possession or enjoyment may be postponed, unless there is some clearly expressed desire or some manifest reason for suspending or deferring the time of vesting. Hence, where there arises from the terms of the instrument a doubt as to whether the remainder is to vest at the death of the testator or is to remain expectant and contingent until the happening of a future event, such as the termination of the particular estate, the doubt is to be resolved in favor of a vested remainder. * * *"

Another apt and familiar rule is stated in Allen v. Maxwell, supra, and Duncan v. De Yampert, 182 Ala. 528, 62 So. 673, 675, as follows:

"* * * 'The rule is that where an estate or interest is given in one clause of a will, in clear and decisive terms, the interest so given cannot be taken away or cut down by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate.' "

There can be no dispute, and we do not understand appellant to question, that the

first sentence of Item Nine, when considered separately, clearly creates a life estate in testator's wife and vested remainders in the other persons named therein. Code 1940, Tit. 47, § 140; Allen v. Maxwell, supra; George v. Widemire, supra; Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72; Phinizy v. Foster, 90 Ala. 262, 7 So. 836.

It is appellant's insistence, however, that other provisions of Item Nine, when considered in connection with the will as a whole, show an overriding intention that the remainder interest was to vest at the death of the life tenant and not at the death of testator.

■ It is argued, first, that the several clauses in Item Nine providing for substitutions in event of death of any of the remaindermen "prior to the above mentioned property vesting in term" show a clear intent to postpone vesting of the remainder interest until the death of the life tenant, since, as contended by appellant, such provisions mean prior to vesting of *possession* of the property. But that is not what the substitutional provisions say. The words used are "prior to the * * * property vesting." Does that mean prior to vesting of *possession* of the property, or prior to vesting of the remainder *interest* in the property? While it might be conceded that these provisions, standing alone and without considering the technical meaning of the words used, are susceptible of the construction contended for by appellant, they are equally susceptible of the other meaning —"vesting of the remainder *interest*" in the property. We do not know, of course, exactly what the testator had in mind when he included these provisions in his will. What he intended is not clear. It is in such situations that courts must resort to application of established rules to aid in ascertaining and giving effect to the testator's intention. When such rules are applied here, we fail to find the required "clear manifestation of the testator's intent" to postpone vesting of the remainder estate until after termination of the life estate; and particularly is this true in view of the clear intent of the first sentence of Item Nine to vest the remainder at testator's

death. Allen v. Maxwell, supra; Duncan v. De Yampert, supra. It is to be observed, too, that we do not have here the question of precedence as between two contradictory clauses. As we have seen, the substitutional clauses are readily reconcilable with the gift clause—the first sentence—of Item Nine. As stated in 57 Am. Jur., Wills, Sec. 1128, p. 721:

"Where a will contains provisions which are apparently inconsistent or repugnant, every effort must be made so to construe the instrument as to harmonize the conflicting words, phrases, or clauses."

■ To the same effect is Ralls v. Johnson, 200 Ala. 178, 180, 75 So. 926, 928, where it is said:

"In this state the rule has been long declared that apparently conflicting clauses must, if possible, be so reconciled as to make each operative, * * *."

The additional argument is made that "the testator clearly wanted his blood relations to become the beneficiaries of his estate." Continuing to quote from appellant's brief:

"and it is not likely that he would have provided a method of disposition following his death and prior to the death of Mrs. Hynde which would defeat his avowed purpose: first, the security of his wife, and second, after her death that his properties descend to his or her blood relatives. Certainly, he did not wish strangers to his or his wife's blood to take what he devised. According to the decree of the Trial Court Joseph A. Hynde devised his property in such manner as to deprive the objects of his bounty,—his own and his wife's relatives,—of a portion, at least, of his property. The decree of the Trial Court causes the property to become the property of strangers to the blood of Joseph A. Hynde and Nellie Lucy Hynde—a portion of the property going to persons Mr. and Mrs. Hynde never knew or heard of while they were living."

Is there any good reason to suppose that testator wanted the relatives living at his

wife's death, rather than those living at his own death, to be able to pass title to strangers to his blood? As we view it, the primary objects of his bounty, next to his wife, were his nieces, nephews, grand-nieces and grandnephews named in Item Nine. They were living when the will was made and when the testator died. Is it not more reasonable to say that testator intended these living and known relatives to have the right of disposition as against such right in unknown relatives at some uncertain future date?

We find no error in the decree rendered by the trial court. It is due to be, and, is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.