142 So.2d 245

A. Sigmund WEIL

v.

Laura J. CONVERSE et al.

2 Div. 417.

Supreme Court of Alabama.

April 5, 1962.

Rehearing Denied June 21, 1962.

Harry W. Gamble, Selma, for appellant.

John Randolph Smith, Selma, for appellees.

COLEMAN, Justice.

This is an appeal from a decree overruling demurrer to a bill in equity seeking to sell real estate for division of the proceeds among the persons alleged to own it as tenants in common.

It is alleged that the land was owned by O. M. Cawthon, deceased, who died testate November 4,.1935, and was survived by a widow, and one daughter named Lucy. The widow is still living. The daughter died November 20, 1958, and left no child or children surviving her.

O. M. Cawthon was survived also by three sisters, and the child of a deceased brother. It appears that the three sisters died prior to the death of testator's daughter. It further appears that the sisters left children and that all the nieces and nephews of the testator are parties to the bill of complaint.

Two nieces are complainants. The other nieces and nephews are respondents. Certain other persons who claim under a deed executed by one of testator's sisters after his death are also respondents. The widow of testator is also a respondent. The appellant, who is a respondent, is alleged to be the devisee of testator's daughter, Lucy. From the decree overruling his demurrer to the bill, appellant brings this appeal.

Appellant argues that his demurrer should have been sustained because the averments of the bill fail to show that complainants have an interest in the lands which they seek to have sold.

This court has said that a bill in equity to sell lands for division among tenants in common should disclose that the parties to the bill, complainant and respondent, are the sole owners of the lands, the interest of each of the parties therein, that the same cannot be equitably divided without a sale for that purpose, and should describe the lands sought to be sold with that certainty required in judicial sales of realty. In alleging such ownership, it is not necessary to set out the source of title relied on by the tenants in common, nor describe the manner in which they or their ancestor acquired it. If, however, complainant does undertake to show the source of the parties' title or equitable interest, he must allege facts which clearly show good title or a perfect equity. If he fails to do so, the bill is insufficient and subject to demurrer even though a sufficient general averment of interest is contained in another paragraph of the bill. Bowden v. Teague, 266 Ala. 30, 93 So.2d 408.

In the instant bill, complainants have undertaken to show the source of the title of the parties. Under the rule above set out, the complainants must allege facts which clearly show good title or a perfect equity. If the facts alleged show title in complainants, the court did not err in overruling the grounds of demurrer now insisted on by appellant. On the other hand, if the facts alleged do not show title in complainants, the demurrer ought to have been sustained.

If complainants have any title to the lands sought to be sold, complainants acquired that title under and by virtue of the will of O. M. Cawthon, deceased, a copy of which is an exhibit to the bill.

The will is dated February 18, 1935. Testator died November 4, 1935. The will was probated November 12, 1935. Testator's daughter, Lucy, died November 20, 1958. The bill of complaint was filed December 18, 1958.

The will contains fourteen items. Item One directs payment of debts. Items Two to Seven, both inclusive, and Items Ten and Eleven are specific bequests of personalty. Item Fourteen appoints executors. Items Eight, Nine, Twelve, and Thirteen with which this appeal is concerned recite as follows:

*"ITEM EIGHT:*

"I give and bequeath to my beloved wife, Benie Cothran Cawthon, for and during her natural life, Lots One (1),

Two (2), Three (3), Four (4) and Six (6) in Block 24 in Perdido Beach, in location and dimensions as shown by plat of said Perdido Beach recorded in the Probate Office of Baldwin County, Alabama, in Map Book 3–N.S., on pages 300 and 301. It is my intention to give to my beloved wife, for her life, all of my real estate in Baldwin County, Alabama, whether the same is correctly described or not. I place the value of this property at Two Thousand Dollars ($2,000.00), and in the division of the property as hereinafter provided for in this will, the value of this property, as above specified by me, is to be deducted from the twenty-five percent (25%) of my estate that I give to my beloved wife, Benie Cothran Cawthon, for her life. It is my will and desire that my daughter, Lucy Cawthon Calhoun, shall personally have the privilege of using this cabin for a period of thirty (30) days each year, at the rental of Ten Dollars ($10.00) per month, at such time and on such occasion, as will not inconvenience my wife, Benie Cothran Cawthon. The remainder interest in said property, I give and bequeath to my beloved daughter, Lucy Cawthon Calhoun."

"ITEM NINE:

"I give and bequeath to my beloved wife, Benie Cothran Cawthon, for her life, the following described real estate located in the City of Selma, Dallas County, Alabama, to-wit: Lot number Seventeen (17) of Block number One (1) of the West End Land Company Addition to Selma as shown on page 78 of a Map of Selma made by Mrs. D. C. Russell. [Further description omitted.] I value this property at Four Thousand Dollars ($4,000.00), and in the division of the property as hereinafter provided in this will, the value of this property, as specified by me, is to be deducted from the twenty-five per cent of my estate that I give to my beloved wife, Benie Cothran Cawthon.

The remainder interest in said property, I give and bequeath to my daughter, Lucy Cawthon Calhoun." [Brackets Added.]

"ITEM TWELVE:

"All property owned by me at the time of my death which is disposed of under the terms of this will, execpt property devised in Items Three, Four, Five, Six, Seven and Eleven of this will, shall be listed by my Executors hereinafter named, and opposite each item shall be placed the value of each piece of property, and such Executors shall divide the property, according to such valuation, between my daughter, Lucy Cawthon Calhoun, and my wife, Benie Cothran Cawthon, in the following proportions: Lucy Cawthon Calhoun, my daughter, shall receive seventy-five per cent of such property, according to such valuation, but such seventy-five per cent shall not include the property given her under Items Three, Eight and Nine of this will. My wife, Benie Cothran Cawthon, shall receive twenty-five per cent of such property, according to such valuation, but such twenty-five per cent shall not include the property given her under Items Eight and Nine of this will. The Executors hereinafter named, however, shall give to the legatees named in this will, the property that I especially devised to such legatees under such will. The Executors named herein, shall execute and deliver to Benie Cothran Cawthon and Lucy Cawthon Calhoun, a deed conveying to each of them, the real estate that they are to receive under my will, but the said deeds shall devise the property to them for the time provided for in this will."

"ITEM THIRTEEN:

"My beloved wife, Benie Cothran Cawthon, shall have only a life estate in the real estate that comes to her under the terms of this will, and the

remainder interest in such real estate shall vest in my daughter, Lucy Cawthon Calhoun, if she be living, and if she be dead, in any child or children that may be surviving her. In case my daughter, Lucy Cawthon Calhoun, predecease my wife, Benie Cothran Cawthon, leaving surviving her no child or children, then on the death of my wife, Benie Cothran Cawthon, the remainder interest in such real estate given to her under this will, shall vest in my next of kin just as if I had died intestate. My daughter, Lucy Cawthon Calhoun, shall receive a life estate only in any real estate devised to her under the terms of this will, except the remainder interest given to her in certain real estate under Items Eight and Nine of this will, and at her death, the remainder interest in such real estate given her under this will, except that devised to her in Items Eight and Nine of this will, shall vest in fee simple in any child or children surviving her. In case my daughter, Lucy Cawthon Calhoun, shall die leaving surviving her no child or children, then the remainder interest in such real estate given to my daughter under this will, except that devised to her under Items Eight and Nine of this will, shall vest in my next of kin just as if I had died intestate."

The real estate here involved is not that disposed of by Items Eight or Nine, but is part of the residuary estate devised by Items Twelve and Thirteen. There is no dispute as to the life estates which were devised to widow and daughter. The dispute is as to the right to the remainder interests which were created by Item Thirteen.

The bill of complaint alleges that Benie Cothran Cawthon, the widow of testator, conveyed her life estate in 25% to the daughter, Lucy, by deed dated May 15, 1946, and that said estate for the life of the widow in 25% was devised by the will of the daughter, Lucy, to appellant. We think it is a fair inference from the averments of the bill, although not stated clearly, that the interest, if any, which the daughter took in the remainder or reversion, by the will of her father, has been transferred to appellant. On that inference, the contest here is between the devisee of the daughter, the appellant, on one hand, and the descendants of the brother and sisters of the testator, the appellees, who are the complainants in the bill, on the other hand.

Appellant contends that under the will, the daughter took not only a life estate in 75%, but also a remainder interest in 100% of the residuary real estate. The appellees contend that the remainder in 100% vested in the descendants of testator's brother and sisters living at the death of the daughter without children surviving her.

Appellant's contention is stated in brief as follows:

"It is the contention of appellant that under the terms of decedent's will his only child, Lucy, received a contingent remainder in the real estate described in the bill, which contingent remainder was limited to take effect and vest upon her death without issue, even though such remainder could never vest in possession. Stated in other words, appellant contends that under the will of O. M. Cawthon, deceased, and particularly under the alternative remainder limited to take effect and vest in his 'next of kin' on the death of his daughter without issue, the 'next of kin' are to be determined as of the date of testator's death, to-wit: November 4, 1935; and the fact that testator's daughter was a life tenant of his estate and his sole 'next of kin' at the time of his death does not change this rule of construction or preclude the daughter from taking the remainder as the only member of the class to which it is limited, there being nothing in the will or bill of complaint to show a contrary intention."

Appellees' contention is stated in their brief as follows:

**500**

"In conclusion, Appellees respectfully submit that the provisions of said will, on the death of Lucy Cawthon Calhoun (Weil), on November 20th, 1958, vested the fee simple title to the property described in said bill of complaint in the Appellees and those claiming with them as set out in said Bill of Complaint, SUBJECT, HOWEVER, to the undivided 25% interest therein for the term of the natural life of Benie Cothran Cawthon, widow of testator, which interest is owned by the Appellant. * * *"

Appellees, as well as appellant, cite Betts v. Renfro, 226 Ala. 635, 148 So. 406, wherein the following rules are stated:

 The cardinal rule, and one above all others for the construction of wills, is to ascertain the intention of the testator, and give it effect if not prohibited by law. Rules of construction are adopted as an aid to the court in ascertaining the intention of the testator when doubtful from the provisions of the will, but the intention of the testator is always the polestar in the construction of wills. Betts v. Renfro, supra.

 The law favors the construction by which the estate is regarded as vested rather than contingent, or by which it will become vested at the earliest moment; and this time is usually at the death of the testator. The intent to postpone the vesting of an estate must be clear, and not arise from mere inference or construction. Betts v. Renfro, supra.

 The rule is that where an estate or interest is given in one clause of a will, in clear and decisive terms, the interest so given cannot be taken away or cut down by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate. Duncan v. De Yampert et al., 182

Ala. 528, 62 So. 673; Springer v. Vickers, 259 Ala. 465, 66 So.2d 740.

 this state the rule has been long declared that apparently conflicting clauses must, if possible, be so reconciled as to make each operative. Springer v. Vickers, supra.

Appellant's argument is that the will shows that the testator determined to give his only child, the daughter, an estate for her life only, if she left children, so as to provide for testator's grandchildren; but that he was content, if the daughter left no descendant, for the remainder interest in the real estate to continue in his next of kin, his daughter, as if he had died intestate.

In a number of cases involving wills where an estate for life was devised to testator's only heir, with remainder to the issue of such heir, and on failure of such issue to testator's heirs, courts have decided that the life tenant was included among the heirs of testator to whom the remainder was devised on failure of issue of the life tenant; and, that on the death of the life tenant, without issue, testator's heirs, and not those living persons who at that later time answered the description of heirs of the testator, took the remainder in fee simple.

Such a case is Himmel v. Himmel, 294 Ill. 557, 128 N.E. 641, 13 A.L.R. 608, which is cited by appellant. See also: 20 A.L.R. 356; 30 A.L.R. 915; 61 A.L.R. 1011; 49 A.L.R. 174; 127 A.L.R. 602; 169 A.L.R. 207; 30 A.L.R.2d 393.

In Himmel v. Himmel, supra, the testatrix devised real estate to her son for his natural life, and "Upon the decease of my said son I hereby direct that all my said real estate heretofore devised to him for * * * life vest in fee simple in the issue of my said son surviving him, * * * but should he die without leaving issue surviving him, then it is my will that such real estate revert and go to my heirs as if no will had been made." The son was the only heir of testatrix at her death. He died without issue fifteen years after the death

of testatrix. The half brothers and sisters of testatrix filed suit for partition. The controversy was whether the devise of the remainder was to those who were heirs of testatrix at the time of her death or to those who were such heirs at the death of the life tenant. The court said the word "heir," in its primary meaning designates the person appointed by law to succeed to the estate in case of intestacy; and where the word occurs in a will, it will be held to apply to those who are heirs of the testator at his death, unless the intention of the testator to refer to those who shall be his heirs at a period subsequent to his death is plainly manifested in the will. The court said further that, while ordinarily, the term "heirs at law" used by a testator refers to those who are or will be such at the testator's death, and not at some later period, and this is the natural import of the words, yet under the rule that the intention of the testator, definitely expressed, will prevail over strictly technical terms, such meaning will be given to the term as will carry out the intention of the testator.

In the Himmel case, the court apparently concluded that the will did not express an intention that the "heirs" who would finally take the remainder should be determined at the death of the life tenant and held that the heirs were to be determined at the death of the testatrix. The decision was that the estate of the son, the life tenant and only heir of testatrix at her death, took the land in fee.

In a case somewhat like but not the same as the instant case, this court considered a will which provided that at the end of a particular period " ' * * * then shall my estate both personal and real descend to my heirs in common.' * * *." This court said: " * * * It was 'my heirs' who were named as the remaindermen. This related to the date of his death to ascertain who answered to that description. * * *" The court held that, under the will, the remainder vested in all the six daughters who were the heirs of testator at the time of his death, although three of them were

devisees of the precedent estate. The principles here pertinent were stated as follows:

"It is noted that there is in this will no survivorship as a condition to the rights of his 'heirs' as devisees. When there is an estate devised, with a limitation over to testator's heirs or others, depending on the contingency that the prior devisee shall die without issue, or that such 'heirs' or others shall survive the devisee, the question of whether those who were such 'heirs' of testator at the time of his death took a vested remainder or one contingent on surviving the first taker after testator's death has given rise to much discussion in this State. (Citations Omitted)

"Those cases show that the question has been fully settled that 'words of survivorship in a will, unless there is manifest intent to the contrary, always relate to the death of the testator.' Alexander v. Alexander, supra [239 Ala. 76, 193 So. 736].

"Those cases proceed on the theory that a will speaks as of the date of the death of the testator, and survivorship therefore is as of that date unless a contrary intent is apparent in the form of the will itself, or the surroundings of testator material in that respect." White v. Fowler, 245 Ala. 209, 211, 16 So.2d 399, 400.

The remainder in the instant will was devised, not to the heirs or heirs at law of testator, but to his "next of kin."

" * * * *Next of kin* has been said by this Court in the matter of *descent and distribution* to mean those entitled to inherit under the law, whether or not there is a blood relation; whereas, in *wills* it means those who according to blood and without reference to statutes are closest in degree of relationship, reckoned on the ascending and descending process of the civil law. (Citations Omitted)" Kimbrough v. Dickinson, 247 Ala. 324, 328, 24 So.2d 424, 426.

The difference between the term, heirs, and the term, next of kin, is not, however, as it seems to us, of significance here. The daughter, Lucy, was testator's next of kin, as well as his heir, at the date of the will and also at his death. If the next of kin who take the remainder are to be determined at testator's death, his daughter, and through her the appellant, takes. If the next of kin are to be determined at the daughter's death, the complainants take a share in the remainder.

On careful examination of all cases cited in the briefs, and some of the scores of others cited in the annotations in A.L.R., supra, we are of opinion that the correct rule of construction to be applied here may be stated as follows:

In the absence of a clear and unambiguous indication of a different intention on the part of the testator, a class described as testator's "heirs" or "next of kin," to whom a remainder or executory interest is given by the will, is to be ascertained as of the time of the death of the testator; and, the circumstance that the heirs or next of kin so determined are also the devisees of precedent estates in the same property, alone, is not sufficient to prevent the application of the general rule or overcome the presumption that such heirs or next of kin are to be determined at the time of testator's death. The circumstance that the devisee of the precedent estate is the sole heir is insufficient, in and of itself, to show that the testator intended that his heirs or next of kin be ascertained at any time other than the time of his own death.

We will repeat that where the will affords clear and unambiguous indication of the intent of testator that the heirs or next of kin be determined at a different time, the testator's intent, so indicated, will be given effect.

These principles, we think, are to be found in our cases. O'Connell v. O'Connell, 196 Ala. 224, 72 So. 81; Wilson v. Ward, 224 Ala. 147, 138 So. 826; Wilcoxen v. Owen, 237 Ala. 169, 185 So. 897, 125 A.L.R. 539; Jones v. Glenn, 248 Ala. 452, 28 So. 2d 198; Allen v. Maxwell, 249 Ala. 655, 32 So.2d 699; Springer v. Vickers, supra.

In Item Twelve of his will, O. M. Cawthon devised the residue of his estate, in the percentages set out, to his wife and daughter. The item closes with direction to executors to execute deeds to the realty to his devisees, but the deeds shall "devise" the property for the time provided in the will. In Item Thirteen testator undertook to provide the time.

Item Thirteen contains four sentences which we will sometimes refer to as clauses. The first clause gives a life estate to the wife, in 25% of the residual realty, with remainder to "vest" in his daughter " * *. * if she be living * * *." and, if she be dead to her surviving children. The necessary and inescapable import of the first clause, regarded as speaking at testator's death, is to give the daughter a vested remainder in the 25% allotted to the wife, if the daughter be living at testator's death. She was living at that time.

If the second clause be regarded as speaking at testator's death, it provides that if the daughter die without surviving issue, before testator dies and also before the wife dies, remainder in wife's 25% shall vest in testator's next of kin who are living at his death. That, we think, is the correct construction of the second clause. Such construction avoids conflict with the first clause and accords with the rule that a will speaks as of the time of testator's death. If the second clause be regarded as speaking as of a time after testator's death, it provides that if the daughter die without surviving issue, after testator dies but before the wife dies, remainder in wife's 25% shall vest in testator's next of kin. Such a vesting in the next of kin conflicts with the prior vesting in the daughter. We do not think the language will justify such a construction.

Having disposed of the remainder in wife's 25% in the first and second clauses, testator proceeds, in the third and fourth clauses, to dispose of the remainder in the daughter's 75%. Such we think is a reasonable construction which will avoid conflicts. The third clause begins with the provision that the daughter shall receive a "life estate only" in "any" real estate, other than that devised in Items Eight and Nine. Complainants rely on this statement in the third clause to establish testator's intent that the next of kin be determined at the daughter's death.

In Gilman v. Congregational Home Missionary Society, 276 Mass. 580, 177 N.E. 621, the court considered the question whether the testator intended that those who should take after a precedent estate were to be his heirs at law, or those who would have been his heirs at law if he had died a moment subsequent to the death of his daughter who was the devisee of a precedent estate devised to her "for and during the term of her natural life only". In considering the effect of the word "only," the court had this to say:

"In the case at bar there seems to us to be no words indicating that the words 'heirs at law' as descriptive of the ultimate beneficiaries of the testator's bounty in the stated contingency were used in any sense variant from their correct meaning. The words of gift of the life estate to the daughter 'for and during the term of her natural life only' show simply the duration of the estate then being created. They are not words of restriction and limitation touching the rest of the will. The same words are used respecting the life estate to her husband. He could by no possibility take under any other clause of the will. The word 'only' at the end of the phrase giving a life estate to the daughter in its context neither enlarges nor diminishes the nature of that estate; it falls short of disclosing a purpose that that is the entire extent of her possible benefaction under the will. * * * Whatever emphasis rightly may be attributed to the word 'only,' it cannot be thought to have been intended to be operative against the daughter and in favor of indeterminate heirs at law not to be defined until after her death. As a part of the entire instrument it is at most a word of admonition to the daughter with respect to her children." (177 N.E. 621, 622, 623.)

We are of opinion that the word, "only," as used in the third clause of Item Thirteen of O. M. Cawthon's will is merely descriptive of the duration of the estate there granted and does not operate to cut down the vested remainder in the wife's 25% clearly devised to the daughter by the first clause, nor to postpone the time of determining the class who ultimately take the remainder under the fourth clause, nor exclude the daughter from that class.

The third clause contains language slightly different from that in the first clause with reference to the daughter's death. The first clause provides that the remainder vest in the daughter, "if she be living, and if she be dead," in her children. The third clause gives a life estate to daughter and "at her death" the remainder shall vest in her children. If the language of the third clause and also the fourth clause be regarded as speaking, with respect to the daughter's death, of a time after testator's death, even so, there is nothing to indicate that the next of kin are to be ascertained at a time other than testator's death.

The concluding words of Item Thirteen suggest the time of testator's death. Those words are: "shall vest in my next of kin just as if I had died intestate." Testator did not say: as if I had died intestate at or after the death of my daughter. He did not say: my next of kin then living. An excerpt from an earlier opinion seems appropriate here:

"* * * the only safe course is to follow the words used in the particular

provision. Not only would a conclusion in accord with appellees' contention find no logical support in the language used, as we view it, but, if such was the testamentary purpose, its clear expression in the clause creating the remainder, as by the use of the words 'surviving' or 'then living,' would have been so easy and natural that we cannot suppose that it escaped the mind of a devisor who was at great pains to provide for grandchildren along with wife and children, * * *." Duncan v. De Yampert, et al., supra. (182 Ala. at pp. 535, 536, 62 So. at p. 676.)

From reading the will, we feel justified in saying that O. M. Cawthon made substantial provision for his wife and daughter, aside from the residue of the real estate. In disposing of the residual realty, testator exhibited a concern for his possible grandchildren, and provided that they should take an interest in that residue if any of them should survive the life tenants. Testator manifested an intention to give his daughter a life estate in 75%, and to preserve the remainder to her children in fee simple, but on failure of such issue, the testator expressed no wish or intention to change the disposition which the law would have made of this residual realty if he had made no will. Testator expressed all he desired in limiting the estate to his daughter for life and the fee to her issue if she should have any, and if none, then testator was content for the realty to pass by the statute of descents.

■ We are of opinion that there is no clear and unambiguous indication of an intention that the next of kin be determined at a time other than the time of testator's death. The daughter was his next of kin at that time.

So construed, the will passed nothing to complainants and they have failed to show an interest in the lands in suit. As a consequence, we are further of opinion that the grounds of demurrer taking that point should have been sustained.

The decree is reversed, and a decree will be here rendered sustaining the demurrer to the bill as a whole and to each of its aspects, and the cause is remanded.

Reversed, rendered and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.