A. Lonnie Nix died in 1953. In his will, he devised all his property to his wife, Osie Cantrell Nix. Mrs. Nix died in 1960. Lonnie Nix's will further provided as follows:
 "After the death of my said wife, I hereby give, devise and bequeath to my nephew W.M. Nix, (upon the condition herein stated) the following described tracts of land, [whereupon the testator described the two tracts of land]; but if said W.M NIX dies without children or their descendants, then, it is my will that said real estate shall revert to my estate and be divided as if I had died intestate, as to same; otherwise it shall be held by the said W.M. Nix, his heirs and assigns in fee simple forever." (Emphasis added.)
W.M. Nix died in 1987, having no children. Thus, by operation of the will, the tracts of land devised in the will to Lonnie Nix's estate were to revert to Lonnie Nix's estate and be divided "as if [he] had died intestate."
During the course of the administration of Lonnie Nix's estate, some of his heirs filed a petition to remove the administration of the estate to the circuit court and filed a petition for sale of the property in the estate for a division of the proceeds.[1] The circuit court ordered that the administration of the estate be removed to that court. Jimmie Sue Spencer, who was Lonnie Nix's daughter and the executrix of the estate, filed an amendment to a pleading in which she asked the circuit court, inter alia, to "determine the rightful owners of said lands in fee simple." In response, Sherley Tate, who until that time was not a party to the action, filed an answer to Spencer's amended pleading in which he claimed an interest in Lonnie Nix's estate. It is not disputed that Tate was a devisee under the will of Roy Fred Nix, who was Lonnie Nix's brother and who had died in 1979.
A hearing was held to determine the identity of Lonnie Nix's heirs and to decide whether to order a sale for division. Tate claims that, because he is Roy Fred Nix's devisee and because Roy Fred Nix was an heir of Lonnie Nix, he has an interest in Lonnie Nix's estate. The circuit court ordered that Lonnie Nix's heirs were to be determined, not as of the date of Lonnie Nix's death, but as of the date of W.M. Nix's death in 1987. At the time of W.M. Nix's death, Roy Fred Nix was deceased. The circuit court also ordered that the land be sold at public auction. It is from the order setting the date of the determination of heirs that Tate appeals.[2] *Page 1081 
The sole issue before this Court is whether the circuit court erred in holding that the heirs of Lonnie Nix were to be determined as of the date of W.M. Nix's death.
The appellees argue that because the evidence in this case was presented ore tenus this Court must presume that the findings of the circuit court are correct. While this statement is true when ore tenus evidence has been presented, no presumption of correctness as to findings of fact will be indulged on review when ore tenus evidence was not presented, and in such a case it is our duty to sit in judgment on the evidence. McCulloch v. Roberts, 292 Ala. 451,296 So.2d 163 (1974). See Turner v. Clutts, 565 So.2d 92
(Ala. 1990).
In Cole v. Plant, 440 So.2d 1054 (Ala. 1983), this Court stated the following concerning the time at which a deceased's heirs should be determined:
 "In the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in light of the surrounding circumstances, the class described as testator's heirs, or next of kin, or relations, or such persons as would take his estate if he had died intestate, to whom a remainder or executory interest is given by the will, is to be ascertained at the death of the testator. Weil v. Converse, 273 Ala. 495, 142 So.2d 245
(1962); Jones v. Glenn, 248 Ala. 452, 28 So.2d 198 (1946); Annot. 49 A.L.R. 174 (1927); Annot. 127 A.L.R. 602 (1940); Annot. 169 A.L.R. 207 (1947); 80 Am.Jur.2d Wills §§ 1437, 1438 (1975); 96 C.J.S. Wills § 695(5)(b) (1957)."
440 So.2d at 1056-57.
In Cole, Robert Dickson died in 1949. He was survived by his wife and four children. He devised certain real property in fee simple to his daughter, Doris Dickson Plant, provided that at the time of her death she left "bodily issue." The will provided that in the event Plant did not leave "bodily issue," then "the title to said lands shall revert to [the testator's] other heirs or descendants, according to the present Laws of Descent Distribution, in the Statutes of Alabama."
Subsequently, Dickson's wife and his children (other than Plant) and their spouses conveyed to Plant all of their right, title, and interest in the real property. Plant attempted to sell the property, and the prospective purchaser required, as a condition of the sale, that she institute a quiet title proceeding to establish her right to the subject lands. The circuit court held that Dickson's "heirs or descendants" were to be determined as of the time of the testator's death rather than as of the time of Plant's death.
This Court affirmed, holding that in the context of Dickson's will the term "descendants" was equivalent to the term "heirs." In reviewing the specific provision in the context of the entire will, this Court stated:
 "Looking at the will as a whole, we note that only in that part of the will devising the land to [Plant] does the testator not explicitly designate at which time his 'heirs' and 'descendants' should be ascertained. In every other paragraph in which a future interest is devised, the testator plainly states it is his wish that upon failure of the initial gift, the remainder shall 'revert to the then heirs of my estate.' The provision devising the [land] to [Plant] merely says: 'shall revert to my other heirs or descendants.' Moreover, the concluding language of this sentence states, 'according to the present Laws.' "
440 So.2d at 1057 (emphasis added in Cole).
In this case, the circuit court found, and we agree, that "other language in the will sheds no light" on the question whether Lonnie Nix's heirs should be determined as of the date of his death or as of the date of W.M. Nix's death. The circuit court then stated as follows:
 "Under Cole, the heirs of A. Lonnie Nix should be determined at the time of W.M. Nix's death because there is a 'clear and unambiguous indication of a different intention to be derived from the will read in light of the surrounding circumstances.' [See Cole, supra, at 1056.] *Page 1082 
In a nutshell, it is clear that A. Lonnie Nix wanted neither Tate, an outsider, nor any other persons not blood-related to him, to have any part of his property. This intention is evident under the then-controlling law, which provied that, under the facts here, Lonnie's division of the property under the law of intestacy would result in distribution to his lineal descendants. Although the language in the will may indicate that heirs should be determined at Lonnie's death, it is very ambiguous. However, Lonnie's other testamentary choices clearly indicate that he wanted to provide for those closest to him (his wife, and, Jimmie Sue Spencer W.M. Nix, Jr., both of whom he helped raise); but, at the same time, he took every precaution to ensure that only blood relations would acquire his property: i.e., only a life estate to his wife, nothing to W.M. Nix's wife, and loss of the fee simple interest if W.M. had no children; then to be divided in accordance with the law of intestate succession. These provisions clearly show that A. Lonnie Nix intended the property to go to only his lineal descendants."
(Footnote omitted; emphasis in original.)
We disagree with the reasoning of the circuit court.Cole provides that the class of persons who are to take an intestate's estate is to be ascertained as of the time of the intestate's death unless there are "clear and unambiguous indications of a different intention."Cole, at 1056. Such clear and unambiguous indications of a different intention are to be derived from the "context of the will, read in the light of the surrounding circumstances."Cole, at 1056.
The will at issue here states that if W.M. Nix dies without children or their descendants, then the land "shall revert to my estate and be divided as if I had died intestate." There is in this provision nothing clear or unambiguous that indicates an intention to ascertain Lonnie Nix's heirs as of a time other than at his death. On the contrary, we interpret the provision to indicate that Lonnie Nix intended for his heirs to be ascertained as of the time of his death. Moreover, the circuit court found that "[a]lthough the language in the willmay indicate that heirs should be determined at Lonnie's death, it is very ambiguous." This finding is notable for two reasons. First, it reveals that the circuit court read the will to indicate that the heirs of Lonnie Nix should be determined as of his death and not as of W.M. Nix's death. Second, the statement indicates that the circuit court misapplied the language in Cole to the controlling provision in Lonnie Nix's will. Cole requires that the heirs of Lonnie Nix be ascertained as of the time of his death unless there is a clear and unambiguous indication to the contrary. Thus, if a will is ambiguous as to when the testator intended his heirs to be ascertained, then courts shall ascertain the heirs as of the time of his death. Only a clear and unambiguous indication of a different intention would allow courts to ascertain the heirs as of a different time. As the circuit court found, Lonnie Nix's will indicates an intention that his heirs be determined as of the time of his death.
The circuit court also found in its order that Lonnie Nix took "every precaution to ensure that only bloodrelations would acquire his property," and that to ascertain the heirs of his estate as of the time of his death would not achieve that result. We recognize that courts must determine the time at which the heirs of a testator are to be ascertained from the context of the will, "read in light of the surrounding circumstances." See Cole, supra, at 1056. We also recognize that the testator's intent is the polestar in the construction of a will. Smith v. Smith,387 So.2d 134 (Ala. 1980). See Galin v. Johnson, 457 So.2d 359
(Ala. 1984). However, we do not agree that surrounding circumstances indicate that ascertaining Lonnie Nix's heirs at the time of his death will achieve a result not intended by him. Lonnie Nix wrote his will in 1938 and he died in 1953. Roy Fred Nix died in 1979, and W.M. Nix died in 1987. The surrounding circumstances indicate that, at the time the will was executed, Lonnie Nix intended to include his brother, Roy Fred Nix, as a beneficiary of his will should W.M. Nix die without children. The *Page 1083 
fact that Roy Fred Nix chose to devise his estate to a person not a blood relative does not change the fact that the circumstances surrounding the execution of Lonnie Nix's will indicate an intention to include Roy Fred Nix as a beneficiary under the facts of this case.
Based on the foregoing, we hold that the heirs of Lonnie Nix are to be determined as of the time of his death. The judgment of the circuit court is due to be, and it is hereby, reversed, and the cause is remanded to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] Because a full recitation is not necessary, we will set out only that portion of the procedural history of this case necessary to frame the issue raised.
[2] Tate petitioned this court for permission to appeal from an otherwise unappealable order of the circuit court. Although Ala. Code 1975, § 12-22-21(7), provides a right to appeal from a probate court order on an application for a sale for division of real property, that section does not specifically provide a right to appeal from a similar order of the circuit court. However, this Court has traditionally treated such orders of the circuit court as though they were orders of the probate court. Accordingly, in this case, we will treat the petition for permission to appeal as a timely filed notice of appeal from an appealable order.